CHARLES B. RAWSON *vs.* INHABITANTS OF UXBRIDGE.

A town having a sufficient almshouse is not liable, under Gen. Sts. c. 70, § 16, for the rent of a tenement occupied by a pauper able to remove to the almshouse.

CONTRACT for the rent, from April 1, 1869, to April 1, 1871, of a tenement occupied by one Patience Kenney, alleged to be a pauper and lawfully settled in the defendant town.

At the trial in the Superior Court, before *Dewey*, J., the plaintiff offered evidence tending to show that Kenney was a pauper; that from time to time, from April 1, 1869, to April 1, 1871, she received from the defendants aid as a pauper, and was supplied by them with some necessaries for her support; that she occupied his tenement during that time; that prior to April 1, 1869, he notified the overseers of the poor that she was destitute and in need of aid, including provisions, fuel and a tenement to live in, from the town; that he requested the overseers to furnish it; that upon this request they, through the plaintiff and others, furnished her with some provisions and fuel, delivered at the tenement, and with their knowledge consumed there.

It appeared that the defendants, during the time, had a sufficient almshouse, and that the pauper was in a condition to be moved to it.

The plaintiff asked the court to instruct the jury, that if they believed that after he had given notice to the overseers of the poor that the pauper stood in need of assistance in procuring a tenement, and had requested them to supply her with one, they had neglected to remove her from the tenement she was occupying, and had continued to furnish her, in that tenement, with assistance consisting of goods and other necessary supplies, then the defendants were liable.

The court declined so to instruct the jury ; but instructed them that if the defendants had provided a sufficient almshouse for the support of its poor, they were not liable to the plaintiff for the use and occupation of his tenement by a pauper, whom he might have ejected therefrom, and who was able to remove to the almshouse, unless the overseers of the poor made an express or implied

contract with him in relation to the occupation of the tenement by the pauper, but if they did make such a contract, the defendants were liable ; that if the facts stated in the plaintiff's request for instructions were proved, they were evidence for the consideration of the jury upon the question of a contract between the plaintiff and the defendants as to the use and occupation of the tenement, but that they were not conclusive evidence of such a contract, or of liability on the part of the defendants.

The jury returned a verdict for the defendants, and the plaintiff excepted.

*T. G. Kent & F. Deane*, for the plaintiff.

*P. E. Aldrich*, for the defendants.

AMES, J. The question raised in this case is disposed of by the decision in *Lamson* v. *Newburyport*, 14 Allen, 30. The defendants were not bound to furnish the pauper with a home elsewhere than in the almshouse, and they were under no obligation to remove her to that house, so long as she had a home elsewhere. It was no part of their business to instruct the plaintiff how to get her into the almshouse from his tenement. If he did not feel willing to permit her to occupy his tenement, and to take his chance as to her ability to pay the rent, all that he had to do was to proceed as he would with any other insolvent tenant, and eject her therefrom. If he did not incline to take that course, it was not in his power, by any formality of notice, to compel the defendants to become parties to a contract to pay the rent, or to force upon them any liability, not provided for by statute. She had no right to choose her own residence, at the expense of the town; and as there was a place to which she could have gone, he is in no position to claim that there was any necessity for the relief which he undertook to afford her in permitting her to continue in occupation of his tenement.

In *Underwood* v. *Scituate*, 7 Met. 214, which is relied upon for the plaintiff, relief had been given by a physician to a pauper who stood in need of immediate medical aid, and the town was held liable to pay the physician for his services, although it had physicians of its own who were under contract for such emergencies. But there was no question of the necessity of the ser-

vices rendered, or that the town was bound to have them actually rendered at all events. In these respects the case differed widely from that now before us. *Exceptions overruled.*