MacLeod-Mancuso, Bonnie H., J.
This matter is before the Court on Defendants’, Fleet Bank (Fleet), Lori G. Dutton (Dutton), Nancy Fleuiy (Fleuiy), Dana Moss (Moss), and Sean M. Robinson (Robinson), motion for summary judgment, pursuant to Mass.R.Civ.R 56, against Plaintiff Gail Terravecchia (Terravecchia). On August 5, 2004, Terravecchia filed suit with this Court alleging breach of contract against *315 Fleet (count one); defamation against Fleuiy (count two); intentional interference with advantageous relations against Dutton, Fleuiy, Moss, and Robinson (count three); and intentional infliction of emotional distress against Dutton, Fleuiy, Moss, and Robinson (count four). Defendants now seek summary judgment on all counts. For the reasons set forth below, Defendants’ motion for summary judgment is ALLOWED.

BACKGROUND

On February 5, 2001, Fleet hired Terravecchia. Her position entailed finalizing loan assignments that Fleet managed. Terravecchia received a Fleet employee handbook her first day of work, however, Fleet did not call special attention to it. Terravecchia might have scanned some of the policies at that time.[2] The Fleet employee handbook does not contain a term of employment. Terravecchia did not sign the handbook upon receipt.
Prior to working at Fleet, Terravecchia worked for several financial institutions over the course of many years, including a stint at BayBank from 1992 to 1995. While at BayBank Terravecchia served as a manager, but was demoted by her supervisor, Dutton, for alleged performance deficiencies. Shortly after Terravecchia’s demotion, Dutton “was informed that [Terravecchia] was no longer at the bank.”
As a Fleet employee, Terravecchia became overwhelmed by the volume of her assignments. She raised this issue with her immediate supervisor, Robinson, and then with the Fleet Ombudsman’s Office.[3] The ombudsman recommended a “climate study,” to assess her overflow concerns, however, Terravecchia’s supervisors chose not to follow the recommendation.
In early 2002, Fleuiy, Robinson’s supervisor, contacted Dutton to discuss Terravecchia’s employment history at BayBank. Fleuiy told Dutton that Fleet was not satisfied with Terravecchia’s performance. Fleuiy sought information from Dutton concerning Terravecchia’s performance at BayBank. Allegedly, Dutton intentionally misinformed Fleuiy that BayB-ank fired Terravecchia in 1995.[4]
On April 2, 2002, Moss, a human resources representative with Fleet, asked Terravecchia to attend at a meeting with himself, Fleuiy, and Robinson. At this meeting, Moss allegedly accused Terravecchia of lying on her Fleet employment application and of committing fraud because she failed to disclose the circumstances surrounding her departure from BayBank. Moss’s alleged accusation was in response to the information that Dutton supplied to Fleury.[5] Ter-ravecchia told Moss, Fleury, and Robinson that she had not lied on her application and she had not committed fraud. Fleet gave Terravecchia forty-eight hours to supply documentation that she was not fired from BayBank. Moss then ordered Terravecchia to vacate the premises within five minutes. Terravecchia provided the requested documentation within forty-eight hours, but Fleet did not allow her to return to work for four days. Terravecchia has asserted that Fleuiy, Moss, and Robinson each failed to investigate Dutton’s alleged comment that Terravecchia had been fired from BayBank.
On April 16, 2002, Fleet issued Terravecchia her first and final warning, which addressed her unsatisfactory work performance.[6] On June 2, 2002, Fleet discharged Terravecchia. Fleet allegedly terminated Terravecchia because of her poor performance whereby she failed to process assignments accurately and efficiently.[7] Terravecchia alleged that she was terminated because she sought assistance from the ombudsman. She also alleged that Fleet ignored the progressive discipline procedure in her case by immediately issuing a final warning and overlooking her positive performance reviews.[8]
After her termination, Terravecchia was treated by her physician, Dr. Arturo R. Rolla, for stress and physical symptoms, which he attributed to her employment difficulties with Fleet.
Terravecchia filed suit with this Court on August 5, 2004 alleging: breach of contract, defamation, interference with advantageous relations, and intentional infliction of emotional distress. Defendants now seek summary judgment on all counts.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element pf his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).

I. Breach of Contract

Employees without a written contract are deemed employees at-will and can be discharged without cause. See O’Brien v. New England Tel & Tel Co., 422 Mass. 686, 691 (1996). Massachusetts courts have held that an employee handbook or manual may be binding on the issuing employer as an express or implied contract under certain circumstances, thereby altering an employee’s at will status. See id. In Jackson v. Action for Boston Comty., Dev., Inc., the Supreme Judicial Court used six factors as guidance *316 to determine whether an employment manual created an implied contract between the employer and his employees. 403 Mass. 8, 14-15 (1988). The SJC held that an implied contract did not exist when: (1) the employer retains the right to modify unilaterally the manual’s terms; (2) the manual provides that it is merely for “guidance” as to the employer’s policies; (3) there is no negotiation between the employer and the employee regarding the terms of the manual; (4) the manual states no term of employment; (5) the employer calls no special attention to the manual; and (6) the employee does not sign or manifest his or her assent to the manual or acknowledge that he or she understood its terms. Id.; see O’Brien, 422 Mass. at 694-95.
Here, Terravecchia claims that Fleet violated its own policies and procedures as outlined in its employee handbook. In particular, Terravecchia argues that Fleet ignored the progressive discipline procedure, which can be found under the heading, “Construction Access Process.” Fleet contends that based on the principles outlined in Jackson and O’Brien, Terravecchia was an at-will employee and Fleet never entered into an implied or express contract with her. As a result, there was no contract to breach and Terravecchia could be fired for virtually any reason or no reason at all. See Jackson, 403 Mass. at 9.
This Court has applied the factors outlined in Jackson to the facts in the instant case, which application demonstrates that Fleet did not form an implied contract with Terravecchia through its employee handbook. The Fleet employee handbook specifically states that (1) it retains the right to unilaterally modify the manual and (2) individual policy documents take precedence over the manual; further, (3) Fleet did not negotiate the manual with Terravecchia; (4) the manual states no term of employment; (5) Fleet did not highlight certain provisions or sections for Ter-ravecchia (in fact, it is questionable whether Ter-ravecchia even read the manual upon receipt); and (6) Terravecchia did not sign the manual, assent to it, or acknowledge to Fleet that she understood the terms contained within. Therefore, the Fleet employee handbook does not constitute an implied contract.
Even if the handbook could be considered an implied contract, Fleet did not violate its terms. Ter-ravecchia alleges that Fleet ignored its own progressive discipline process, however, Fleet reserved the right in the manual “to accelerate or bypass one or more of [the disciplinary] steps due to the nature of the problem or [an] overriding business concern.” The three-step disciplinary program that Terravecchia cites to provided guidelines for Fleet and its employees. Fleet did not violate the terms of the handbook when it bypassed steps one and two of the disciplinary process and immediately issued a final warning.

II. Defamation

Defamation is the publication of a false statement about the plaintiff to a third party that either causes economic loss or is of the type that is actionable without proof of economic loss. Phelan v. May Dep’t Stores Co., 443 Mass. 52, 55-56 (2004) (citations omitted). A claim that is actionable without proof of economic loss is one that “would tend to hold that plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." Id. at 56, quoting Stone v. Essex Cty. Newspapers, Inc., 367 Mass. 849, 853 (1975). “The element of publication is satisfied where the defamatory communication is transmitted to even one person other than the plaintiff.” Id. (citation omitted).
In this case, Terravecchia alleges that Dutton, her former supervisor at BayBank, knowingly misinformed Fleuiy that she had been fired from BayBank. Looking at the facts in the light most favorable to Terravecchia, she has no reasonable expectation of proving an essential element of her case at trial, namely publication. While Terravecchia claims that Dutton made a defamatoiy statement to Fleuiy, both Dutton and Fleuiy deny that such a statement was uttered. Therefore, Fleuiy is entitled to judgment as a matter of law on count two.
Even if Terravecchia can prove publication, Fleury is still entitled to judgment as a matter of law. An exception to liability exists for employers who enjoy a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer’s legitimate interest in the fitness of an employee to do his or her job. Bratt v. Int’l Bus. Machs. Corp., 392 Mass. 508, 509 (1984). The privilege applies unless the employer recklessly makes unnecessary, unreasonable, or excessive publications. White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 69 (2004) (quotation and citation omitted). The employee bears the burden of demonstrating that the employer acted recklessly. Foley v. Polaroid. Corp., 400 Mass. 82, 95 (1987). Here, Terravecchia has made no allegations of recklessness. Summary judgment is therefore appropriate.

III. Intentional Interference with Advantageous Relations

To substantiate a claim of intentional interference with advantageous relations, a plaintiff must prove; an advantageous employment relationship; defendant’s knowledge of such a relationship; defendant’s interference, in addition to being intentional, was improper in motive or means; and plaintiff suffered economic harm as a result of defendant’s conduct. Blackstone v. Cashman, 448 Mass. 255, 260 (2007); Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 394-95 (2005). In the employment relationship, an employee’s supervisor enjoys a privilege to act within the scope of his or her responsibilities unless *317 the supervisor acts out of malevolence, or actual malice. Blackstone, 448 Mass. at 260-61; Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993).
Actual malice requires “a spiteful malignant purpose unrelated to the legitimate corporate interest.” Wright v. Shrines Hosp. for Crippled Children, 412 Mass. 469, 476 (1992); see, e.g., O’Brien, 422 Mass. at 690 (holding sufficient evidence of malice when supervisor “prompted by his resentment,” screamed at and insulted employee on a daily basis); Clement v. Rev-Lyn Contr. Co., 40 Mass.App.Ct. 322, 325 (1996) (finding actual malice when defendant slandered the plaintiff in the presence of others without basis and with threats of physical violence). Negligence, sloppiness, or even unfair business practices do not rise to the level of malice. See Boothby, 414 Mass. at 487; Wright, 412 Mass. at 476; Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 665 (1981); Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass.App.Ct. 550, 556 (2003). The plaintiff may show malice by inference, however, a plaintiff will not succeed by merely showing an adverse impact or a “laundiy list” of facts which may or may not indicate that the defendant acted out of actual malice. Alba v. Sampson, 44 Mass.App.Ct. 311, 315 (1998); see also Shea v. Emmanuel Coll., 425 Mass. 761, 763-64 (1997) (holding no reasonable inference of actual malice where there is evidence of “trouble on the job” and plaintiffs interferences amount to mere speculation). The plaintiff bears the burden of proving that an improper motive or means was the “controlling factor” in the defendant’s interference. Sklar, 59 Mass.App.Ct. at 554.
Here, Terravecchia bases her allegations of intentional interference with advantageous relations on her supervisors’ failure to investigate Dutton’s false statements. Terravecchia alleges that Fleuiy and Robinson accused her of having a poor performance record, an accusation which she claims was without merit, and that both supervisors failed to comply with Fleet’s progressive discipline plan. With respect to Moss, Terravecchia argues that he accused her of lying and committing fraud without making any effort to investigate the validity of such an accusation, and he failed to enforce Fleet’s progressive discipline plan by approving her final written warning. Terravecchia also brings such a cause of action against Dutton, alleging the same facts as those present for her defamation claim. Terravecchia’s intentional interference with advantageous relations claim relies principally on the same facts and circumstances as her defamation claim. Ter-ravecchia has no reasonable expectation of proving that a false statement concerning her employment at BayBank was uttered by Dutton to Fleuiy and then repeated to Robinson and/or Moss. Therefore, she cannot show that the defendants interfered with her employment relationship with Fleet.[9] Moreover, Terravecchia makes general allegations that each of the defendants acted with improper motive or means by collectively trying to remove her from her position out of spite. See Polaroid Corp. v. Rollins Envtl. Servs., 416 Mass. 684, 696 (1993) (holding bare assertions and conclusions contained within an affidavit are insufficient to withstand a motion for summaiy judgment). Because Terravecchia has no reasonable expectation of demonstrating that any of the defendants interfered with her employment relationship or that any of the defendants were motivated by improper motive or means, her claim must fail.

IV. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must show that:
(1) the defendants intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, ... (2) that the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) [that] the actions of the defendant were the cause of the plaintiffs distress, and (4) [that] the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.
Conley v. Romeri, 60 Mass.App.Ct. 799, 803 (2004) (quotation and citations omitted); see Mello v. Stop & Shop Cos., 402 Mass. 555, 562-63 (1988). Extreme and outrageous conduct requires more than “bad manners,” or conduct which results in “hurt feelings.” Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). There can only be an issue for the juiy if reasonable people could differ on whether the conduct was “extreme, and outrageous.” Boyle v. Wenk, 378 Mass. 592, 597 (1979), citing Agis, 371 Mass. at 145-46. Terravecchia argues that Dutton, Fleuiy, Robinson, and Moss each intentionally inflicted emotional distress by their false allegations that she maintained a poor performance record at BayBank and/or their false allegations concerning her poor work performance at Fleet.
Terravecchia also highlights the April 2, 2002 meeting where Moss ordered her to vacate the Fleet premises within five minutes, and her subsequent inability to return to work for four days.
Terravecchia’s claim must fail as a matter of law because these allegations, even if true,[10] do not rise to the level of extreme and outrageous conduct. See, e.g., Bowman v. Heller, 420 Mass. 517, 522 (1995) (upholding trial court’s finding that defendant’s conduct was extreme and outrageous when he superimposed plaintiffs face onto pornographic images and distributed them throughout the office); Richey v. Am. Auto. Ass’n, 380 Mass. 835, 839 (1980) (holding that even if trier of fact inferred that plaintiffs supervisor made a bad, unjust, and unkind decision to fire the *318 employee, plaintiff still fell short of establishing a claim for intentional infliction of emotional distress); Tech Plus, Inc. v. Ansel 59 Mass.App.Ct. 12, 26-27 (2003) (holding that a co-employee’s statements to others that the plaintiff was anti-Semitic and homophobic were sufficient to survive summary judgment on emotional distress claim). The Court concludes that Ter-ravecchia has no reasonable expectation of proving the requisite level of extreme and outrageous conduct, an essential element of her case, and therefore, Dutton, Fleury, Robinson, and Moss are entitled to summary judgment on count four.

ORDER

For the reasons stated above, it is hereby ORDERED that Defendants’ motion for summary judgment is ALLOWED as to all counts.

The Fleet employee handbook states:
This handbook does not create any express or implied contractual or other legal obligations for the company or its employees, either expressed or implied, and does not alter the at-will nature of an individual’s employment with the company or in any way create a promise of continued employment with the company. Fleet can modify or eliminate any policy or its related practices or procedures at any time with or without notifying employees. In the event of a conflict between the policies outlined in this handbook and the individual policy documents, the individual detailed policy documents shall govern.

Fleet’s employee handbook contains a policy that provides employees with the opportunity to meet with a corporate ombudsman. The policy states:
Fleet’s corporate Ombudsman is a confidential resource, outside of the normal reporting line and Human Resources, available to help employees with issues related to discrimination, workplace equity and fair treatment.
... In addition to talking with a manager or Human Resources representative, speaking with the Ombudsman provides Fleet employees with another channel to raise concerns.
As Fleet’s designated neutral, the Ombudsman will look at all sides of the equation and address each situation with confidentiality, sensitivity and objectivity. The Ombudsman will respect any request for confidentiality, but an employee should recognize that this might limit the ability to help resolve a conflict.

Dutton and Fleury both denied that such a statement was made.

Fleury and Robinson both denied that Moss accused Terravecchia of lying and/or committing fraud.

Fleet issued Terravecchia a final warning through a letter from Robinson that stated: As stated in such meeting, you were notified that your overall performance does not meet the minimum requirements for your position (emphasis in original). Your productivity is at an unacceptable level. As a result of your overall poor performance, Fleet has been subject to significant, unnecessary risks as described below: (emphasis in original) ... As discussed, due to the seventy of the instances resulting from your poor performance, you are hereby being placed on a Final Written Warning effective immediately.

Fleet enumerated Terravecchia’s performance problems in its final warning letter. The letter listed the following deficiencies:

Significant, Unnecessary Financial Risk

As detailed in Exhibit A to this memorandum, Fleet incorrectly wired $41,660.01 to member banks due to delayed submission of booking packages. Per department procedures and training you received on 09/24/01 & 09/25/01, all booking packages must be submitted on the day of closing.
Fleet is also subject to Compensation, Reputation, and Confidentiality Risk due to this delayed submission of booking packages.

Significant, Unnecessary Reputation Risk

As detailed in Exhibit B to this memorandum, twenty-nine (29) instances have been documented where overall poor performance resulted in either a delay in submission of a booking package, or a customer complaint.

Significant, Unnecessary Compliance Risk

As detailed in Exhibit B to this memorandum, Fleet misreported six million dollars ($6,000,000) in syndicated loan commitments to the Office of the Comptroller of the Currency (OCC) due to a 56-day delay in submission of a booking package.
It has also been discovered that you are in violation of Fleet’s policy on Use of Communication Resources as it relates to your excessive personal use of both the telephone and email. In addition, given your poor overall performance, it is apparent that this excessive personal use of Fleet’s Communication Resources interferes with your work responsibilities.

Fleet’s employee handbook provides a progressive discipline procedure under the heading “Constructive Action Process.” The handbook states:
The constructive action process consists of the following three steps:
Informal counseling session
Formal counsel/action plan (in writing)
Written warning
Generally, Fleet follows this process in sequence until an individual’s performance or conduct meets expectations. In some cases, it may be necessary to accelerate or bypass one or more of these steps due to the nature of the problem or overriding business concern. Some problems may justify other disciplinary action, up to and including immediate termination of employment.

Terravecehia seems to reincorporate her breach of contract claim (count one) against Fleury, Robinson, and Moss under count three, alleging that they ignored the progressive discipline process as outlined in the employee handbook. While Terravecchia may feel that she was treated unfairly, the employee handbook is not contractually binding on her employer and mere unfairness does not constitute a cause of action for intentional interference with advantageous relations. See Boothby, 414 Mass. at 487; Wright, 412 Mass. at 476; Gram, 384 Mass. at 665.

This Court has already discussed Terravecchia’s failure to allege facts by which a jury could conclude that any false statements were made regarding her employment and termination from BayBank.