Fabricant, Judith, J.
INTRODUCTION
This action arises from the defendant’s effort to foreclose on the plaintiffs home mortgage. Before the court is the motion of the defendant, American Home Mortgage Servicing, Inc. (“AHMSI”), to dismiss the claims against it. For the reasons that will be explained, the motion will be allowed.
*397 BACKGROUND
For purposes of the present motion, the Court accepts as true all well-pleaded factual allegations of the complaint, but disregards conclusions and characterizations asserted therein. See Sisson v. Lhowe, 460 Mass. 705, 707 (2011); Welch v. Sudbury Youth Soccer Ass’n, 453 Mass. 352, 354 (2009); Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991). Considered in that manner, the plaintiffs First Amended Verified Complaint (the complaint), filed on November 21, 2011, provides the following factual background.
In 2005, the plaintiff borrowed $600,000 from an entity called American Brokers Conduit (“ABC”)[1] to refinance his home, giving ABC a mortgage on the home as security for the debt. A written agreement, referred to in the complaint as the “mortgage agreement (’Mortgage Note’ or ‘Note’),”[2] required that the plaintiff make monthly payments to AHMSI at an address in Dallas.[3] ABC did not then assign the note to AHMSI, and AHMSI, according to the complaint, “has never obtained title to the Note.”[4]
In 2006, after an injury and a decline in his business income, the plaintiff contacted AHMSI to request modification of the loan. AHMSI informed him that he would not qualify for modification because he was current on his payments. Nevertheless, sometime later (the complaint does not specify when), AHMSI sent the plaintiff an application for modification, which he filled out and returned. Receiving no response after several weeks, the plaintiff contacted AHMSI repeatedly, triggering “various and conflicting responses.” Eventually, AHMSI informed the plaintiff that it had lost his application.
In March of 2007, according to the complaint, AHMSI increased the monthly payment on the debt by approximately $375, more than 13 percent. The increase, the complaint alleges, “(u]pon information and belief was a breach of the terms of the Note under which the interest rate was to remain ‘fixed,’ ... for the first five years” (135).[5] An unidentified employee of AHMSI told the plaintiff by telephone “that AHMSI was not subject to the same rules as banks and therefore, it could increase the payment amount at will without notice” (136).
Fearing foreclosure, the plaintiff initially paid the higher amount, while continuing to inquire about modification. He was unable, however, to make the payment due in August of 2007. By letter dated September 2, 2007, AHMSI notified the plaintiff that he was in default, and that, unless he cured the default by making payments for August, September, and October by October 1, 2007, “we may at our option, declare that all of the sums secured by your deed of trust shall be immediately due and payable without further demand and invoke the power of sale.”
Shortly thereafter, in response to inquiries from counsel for the plaintiff, AHMSI agreed to consider a renewed application for modification, which the plaintiff submitted on October 27, 2007, and again in duplicate on November 5, 2007. AHMSI never responded to that application, despite the plaintiffs repeated inquiries. In an effort to avoid foreclosure, on December 1, 2007, the plaintiff filed for bankruptcy protection.[6] AHMSI received notice of the plaintiffs bankruptcy but took no action in the bankruptcy court. The plaintiff continued to communicate with AHMSI regarding modification, to no avail. On May 7, 2008, the bankruptcy court entered an order discharging the plaintiffs debt to ABC and enjoining collection activity.[7]
By letter dated November 25, 2008, AHMSI again notified the plaintiff that he was in default, indicating that it would foreclose unless he paid an outstanding arrearage of $62,845.15, with interest and fees accruing at $146.48 per day. While trying to raise funds to make payment, the plaintiff continued his efforts to elicit a response to his application for modification, without success. Fearing foreclosure and homelessness, the plaintiff and his wife experienced severe emotional distress.[8]
Throughout this process, the complaint alleges, AHMSI lacked “title” to what the complaint refers to as the note. AHMSI attempted to correct that situation in late 2008 by filing with the registry of deeds a document, dated December 11, 2008, captioned “Assignment of Mortgage,” signed before a Georgia notary by two individuals identified as officers of Mortgage Electronic Registration Systems, Inc. (MERS), which the document in turn identifies as “nominee for American Brokers Conduit.” The document recites that MERS, as nominee for ABC, assigns to AHMSI, whose address is in California, the mortgage on the plaintiffs property, “securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such mortgage.”[9] The document identifies the property, the original mortgagor and mortgagee, and the loan amount, and adds under “Mise. Comments,” “Assignment Effective Date 7/17/2008.”
On August 20, 2009, AHMSI filed a petition in the Land Court under the Servicemembers Civil Relief Act, with supporting documentation including an affidavit representing its ownership of the note. AHMSI did not notify the plaintiff of that filing.
AHMSI next contacted the plaintiff by letter dated September 24, 2009, inviting him to apply for the federal “Home Affordable Modification Program" (HAMP). The plaintiff again submitted an application, followed by additional information requested by AHMSI. AHMSI’s letter of November 16, 2009, seeking that additional information, represented that “unless you are being considered for a Home Affordable Mod *398 ification Program loan modification or unless required by applicable law, AHMSI will not suspend or forestall the foreclosure process in any way."
On December 2, 2009, the Land Court issued an order of notice under the Servicemembers Civil Relief Act. AHMSI waited nearly a month after that date before serving that order on the plaintiff.[10]
In January 2010, AHMSI notified the plaintiff that he was ineligible for modification under HAMP because “AHMSI did not receive all required verification by the noticed due date,” although it had not previously specified any due date, and the plaintiff had provided all requested documentation.[11] AHMSI indicated, however, that “if we have enough information to consider you for a loan modification that is not a HAMP modification ... we will send you a package that includes the non-HAMP Modification Agreement and other documents that you must sign . . . An AHMSI associate will call you to discuss the details . . AHMSI did not follow up on those representations.
Instead, AHMSI scheduled a foreclosure sale, by auction, for March 1, 2010. It did not -notify the plaintiff, who learned of the scheduled auction through a leaflet left at his doorstep by an attorney offering assistance. The plaintiff filed this action on February 16,2010, seeking a short order of notice and preliminary injunction.[12] On February 24, 2010, after a hearing at which AHMSI did not appear, the Court (Troy, J.) issued a preliminary injunction barring AHMSI from foreclosing on the property without court approval.[13]
The complaint sets forth claims of violation of G.L.c. 93A, §§2, 9 (count I); negligent.infliction of emotional distress (count II); intentional infliction of emotional distress (count III); and breach of contract (count IV). As to the c. 93A claim, the complaint alleges that plaintiff “has complied with demand requirements as provided in G.L.c. 93A, §9(3)” (¶116) but provides no further detail regarding any pre-suit demand. As to the contract claim, the complaint asserts that “AHMSI increased the payment amount in violation of the provisions in the ‘Adjustable Rate Note’ section of the Mortgage Note” (91136), but does not provide the language of that document or supply a copy. As to the claims of negligent and intentional infliction of emotional distress, the complaint asserts that AHMSFs conduct, undertaken with knowledge of the plaintiffs vulnerable condition, was both negligent and intentional; that it was extreme and outrageous; and that it caused the plaintiff to suffer severe emotional distress resulting in physical harm.[14] AHMSI has moved to dismiss all counts.
DISCUSSION
To withstand a motion to dismiss, a plaintiffs complaint must set forth “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement. . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 557 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
1. Violation of G.L.c. 93A.
AHMSI contends that count I must be dismissed because the complaint does not adequately allege that the plaintiff served it with a written demand for relief at least thirty days before filing the action under G.L.c. 93A, §9, as required by §9(3).[15] The Court agrees. That subsection provides:
At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days .. . makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered . . . The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth
The purpose of the pre-suit demand requirement, as the statute makes plain, is to “facilitate the settlement and damage assessment aspects of c. 93A.” Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975), citing Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). In accord with that purpose, compliance with the requirement is a “special element [that] must be alleged and proved.” Id.; see also Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 287 (1985). The pre-suit demand is not merely “a procedural nicety.” Rodi v. Southern New England Law School 389 F.3d 5, 19 (1st Cir. 2004). Rather, it is a “prerequisite to suit,” the absence of which warrants dismissal. Kanamaru v. Holyoke Mutual Insurance Co., 72 Mass.App.Ct. 396, 407-08 (2008); see Boston v. Aetna Life Ins. Co., 399 Mass. 569, 574 (1987) (failure to meet pre-suit demand requirement is “fatal” to c. 93A claim).
Here, as indicated supra, the complaint alleges, in conclusory fashion and without further detail, that the *399 plaintiff “has complied with demand requirements as provided in G.L.c. 93A, §9(3).” That bare conclusion might have sufficed under the motion to dismiss standard in effect prior to Iannacchino v. Ford Motor Co., 451 Mass. at 636, and Bell Atl. Corp. v. Twombly, 550 U.S. at 557. See Slaney, 366 Mass. at 704 (“The plaintiff in the instant case, by alleging that he sent such a demand letter, satisfied this prerequisite to suit”). The Court is not persuaded that it suffices under the standard now in effect. Without further specificity as to sending of a demand letter, including its timing and contents, and the identity of the entity to which the plaintiff directed it, the complaint does not set forth allegations sufficient to show that the plaintiff is entitled to relief. See Iannacchino, supra, 451 Mass. at 636.
The plaintiff points to Mass.R.Civ.P. 9(c), which provides that, “when pleading the performance ... of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed.” As the cases cited supra indicate, compliance with the statutory requirement of a pre-suit demand is not a mere “condition precedent,” but is an element of the claim. As such, the plaintiff must plead and prove compliance, as he must all other elements of the claim. Compare Vasys. v. Metropolitan District Commission, 387 Mass. 51, 55-56 (1982) (holding that general averment of compliance with statutory condition precedent of presentment under G.L.c. 258 suffices to shift to defendant burden to deny compliance specifically and with particularity).
Plaintiff also invokes the exception, set forth in G.L.c. 93A, §9(3), for claims asserted “by way of counterclaim or cross-claim.” He suggests that his c. 93A claim is effectively a counterclaim to the proceeding filed by AHMSI in the Land Court under the Service member’s Civil Relief Act. This theory disregards both the nature of that action and its forum. See Beaton v. Land Court, 367 Mass. 385, 390 (1975) (discussing limited scope and purpose of proceeding under Servicemembers Civil Relief Act). The plaintiff, not the defendant, initiated this action in this Court. His c. 93A claim is not a counterclaim or cross claim.
The plaintiff also invokes the statutory exception for cases where “the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth.” G.L.c. 93A, §9(3). The assignment supplied by the plaintiff himself, as an exhibit to his complaint, establishes that at least as of November 20, 2008 — fifteen months before the plaintiffs suit — AHMSI owned the mortgage on the plaintiffs property in Massachusetts. Such a mortgage is an asset within the Commonwealth. See Okoye v. Bank of New York Mellon, 2011 WL 3269686, *4 (D.Mass. July 28, 2011); In re Anderson, 2006 WL 2786974, *1 (Bankr. D.Mass. Sept. 26, 2006).
It follows that the plaintiffs claim under G.L.c. 93A must be dismissed as a matter of law. The question arises whether dismissal should be with leave to amend to plead facts sufficient to show compliance. If the plaintiff did not in fact serve a demand in compliance with the statute, he cannot cure that defect now. But if he did, and merely failed to include in his complaint sufficient factual detail to show that he did, that defect would be subject to cure.
Although the plaintiff did not supply the pertinent facts in his complaint, he has done so in his opposition to the present motion, and in an accompanying affidavit of his counsel, in which counsel asserts that she sent demand letters to an attorney for AHMSI and to its registered agent on November 15, 2011, and December 1, 2011. Letters sent on those dates would not meet the statutoiy requirement of a written demand at least thirty days before filing, even if the Court treats the November 21, 2011, First Amended Verified Complaint as the relevant filing. It thus appears that the defect cannot be cured by amendment. Accordingly, the Court will dismiss count I without leave to amend.
2. Count II: Negligent Infliction of Emotional Distress.
To state a claim for negligent infliction of emotional distress, the plaintiff must allege facts indicating, among other elements, that the defendant owed him a dufy of care. That element is “fundamental . . . , because ‘[t]here can be no negligence where there is no duly.’ ” Conley v. Romeri, 60 Mass.App.Ct. 799, 801 (2004), quoting McHerron v. Jiminy Peak, Inc., 422, Mass. 678, 681 (1999). Whether a duty exists or not is a question of law for the Court, “to be determined by reference to existing social values and customs and appropriate social policy.” Conley, supra. Where a duty exists, it generally arises from the relationship between the parties. E.g., Young v. Garwacki, 380 Mass. 162, 168-71 (1980) (relationship between residential landlord and tenant’s invitee).
Here, on the facts alleged, the role of the defendant was as assignee of the plaintiffs loan, and, at an earlier stage, as servicing agent for the lender. The relationship between the parties was thus that of creditor and debtor, or lender and borrower. “[A] lender owes no general duty of care to a borrower.” Corcoran v. Saxon Mortgage Services, Inc., 2010 WL 2106179, *4 (D.Mass. May 21, 2010), citing In re Fordham, 130 B. R. 632, 646 (D.Mass. 1991). As the plaintiff points out, a mortgagee exercising a power of sale has a contractual duly to act in good faith, and to use reasonable diligence to protect the mortgagor’s economic interest in maximizing the sale proceeds. Williams v. Resolution GGF OY, 417 Mass. 377, 382-83 (1994). But the existence of that contractual duty provides no support to the plaintiffs theory that a party in the position of the defendant here has a general duly in the course of servicing a loan to exercise care to protect the plaintiffs emotional condition.
The plaintiff cites cases recognizing a cause of action by a mortgagor against a mortgagee based on *400 violation of HAMP regulations. Cruz v. Hacienda Associates, LLC, 446 B.R. 1, 4-5 (Bank. D.Mass. 2011); Blackwood v. Wells Fargo Bank, 2011 WL 1561024, *3-4 (D.Mass. Apr. 21, 2011). These decisions held that violation of HAMP regulations, incorporated into the lender’s agreement with the Federal National Mortgage Association (Fannie Mae), could constitute violation of G.L.c. 93A and of the implied covenant of good faith and fair dealing. But nothing in these cases establishes any general duty of care from lender to borrower, such as to support a claim of negligent infliction of emotional distress.
Finally, the plaintiff cites two regulations issued by the Massachusetts Division of Banks that impose certain duties on holders and servicers of home mortgage loans; 209 Code Mass. Regs. §18.21 (prohibiting loan servicers from using “unfair or unconscionable means in servicing any loan,” including “(k)nowingly or recklessly facilitating the illegal foreclosure of real property collateral”); and §32.39 (requiring certain disclosures to borrowers upon loan transfer). These regulations impose certain specified duties, breach of which might support a claim under G.L.c. 93A for resulting economic harm. They do not establish a general duty of care on the part of a lender, mortgage holder, or loan servicer, toward a borrower or mortgagor. The Court concludes that count II fails to state a claim on which relief may be granted, and must be dismissed.
3. Count III: Intentional Infliction of Emotional Distress.
To state a claim of intentional infliction of emotional distress, a plaintiff must allege facts indicating “(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.” Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976) (internal quotations and citations omitted). It is not enough “that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ‘malice,’ or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (internal quotations and citations omitted).
Defendant contends that count III fails to state a claim of intentional infliction of emotional distress, because the conduct alleged does not rise to the level of extreme and outrageous. The Court agrees. As noted supra, the defendant’s alleged conduct amounts to the following: (1) it repeatedly invited the plaintiff to apply for modification, but then unreasonably failed to act on his applications, leaving him in constant fear of foreclosure and homelessness; and (2) it demanded increased payments without legal right to do so, causing the plaintiff to suffer financial hardship leading to default, for which it then threatened and later attempted to foreclose. This conduct may have been unfair and deceptive in violation of G.L.c. 93A. Also, as will be discussed infra, the allegedly unauthorized demand for increased payments may have constituted a breach of contract. But no reasonable juror, in the Court’s view, could find such conduct to be “extreme and outrageous . . . beyond all possible bounds of decency and . . . utterly intolerable in a civilized community.” Agis, supra, 371 Mass. at 145. See Young v. Wells Fargo Bank, N.A., 2012 WL 734187, *6 (D.Mass. 2012) (dismissing claim of intentional infliction of emotional distress based on similar factual allegations). Count III will be dismissed for failure to state a claim on which relief may be granted.
4. Count IV: Breach of Contract.
To state a claim of breach of contract, a plaintiff must allege facts indicating (1) the existence of a contract; (2) the plaintiffs own performance of its material obligations under the contract; (3) the defendant’s breach of a material obligation under the contract; and (4) damages resulting from the breach. See Singarella v. City of Boston, 342 Mass. 385, 387 (1961); Precision Piping Assocs. Inc. v. City of Boston, 3 Mass.App.Ct. 148, 149 (1975); Loranger Constr. Corp. v. E.F. Hauserman Co., 1 Mass.App.Ct. 801 (1973). Conclusory assertions of obligation and breach are not sufficient to meet the pleading standard established in Iannacchino, 451 Mass. at 636; rather, allegations sufficient to “plausibly suggest” an entitlement to relief include, at a minimum, identification of the specific contractual obligation alleged to have been breached, and the specific conduct alleged to constitute the breach. See Brooks v. AIG Sunamerica Life, 480 F.3d 579, 586 (1st Cir. 2007).
As indicated supra, the basis for the plaintiffs contract claim, as set forth in the complaint, is that in March of 2007, “AHMSI increased the payment amount in violation of the provisions in the ‘Adjustable Rate Note’ section of the Mortgage Note” (¶136), which, “(u]pon information and belief,” set a fixed rate of interest “for the first five years” (¶35). Defendant challenges the sufficiency of these allegations on two grounds: first, it contends that it had no contractual obligation to the plaintiff in 2007, and took no action toward the plaintiff at that time, since it only came into existence in 2008. Second, it contends that the complaint fails to provide sufficient information to identify the contractual obligation and the conduct constituting the alleged breach. The Court is not persuaded by the former theory, but agrees with the latter.
*401 As to the identity of the defendant and its contractual relationship with the plaintiff, as indicated supra, the allegations of the complaint, considered together with the public records supplied by the defendant, suffice at this stage to support the inference that the defendant before the Court is the successor to the entity that previously existed under the same name, which was identified in the note as the entity to which the defendant should direct his payments. The complaint thus suffices to allege that AHMSI functioned as the loan servicer, standing in the shoes of the lender and holding its contractual obligations to the plaintiff.
The complaint is deficient, however, in that it fails to identify those obligations with any specificity, merely asserting, in conclusory fashion and “(u]pon information and belief’ (¶ 136), that the note set a fixed rate of interest “for the first five years” (4135). A $600,000 note, secured by a home mortgage, would necessarily be in writing, and set forth specific terms, enabling the plaintiff to supply the precise language on which he relies. No justification appears for his failure to do so. Nor does the complaint identify with any specificity the defendant’s alleged conduct, beyond asserting that the defendant increased the payment amount by a specified figure. That bare assertion does not indicate whether the increase, which must have been set forth in a written notice, purported to be based on adjustment of the interest rate, as he appears to suggest, or on a change in a required escrow, recoupment of an arrearage, or some other ground. Without such information, the Court cannot conclude that the allegation of an increase “plausibly suggest(s)” a violation of the note. lannacchino, 451 Mass. at 636.
If the facts are as the plaintiff contends, these deficiencies should be subject to cure, through an amended complaint either appending and incorporating the pertinent documents, or at least quoting or substantially paraphrasing their pertinent provisions. Accordingly, the Court will dismiss count IV with leave to file an amended complaint, within thirty days, sufficient to state a claim of breach of contract.
CONCLUSION AND ORDER
For the reasons stated, American Home Mortgage Servicing, Inc.’s Motion to Dismiss Plaintiffs First Amended Verified Complaint is ALLOWED. Plaintiff is granted leave to file a second amended complaint, within thirty days, asserting a single claim of breach of contract only.

 The complaint identifies ABC as a New York Corporation, and asserts “upon information and belief’ that ABC is “an affiliate, predecessor, subsidiary!,] parent and/or alter ego” of AHMSI.

 The complaint creates considerable ambiguity and confusion by using the terms “mortgage” and “note” interchangeably. Drawing all reasonable inferences in the plaintiffs favor, as it must at this stage, the Court reads references to the mortgage or the note as indicating both or either, as favors the plaintiff in each instance.

 The complaint identifies AHMSI as either a Maryland (412) or a Delaware (¶6) corporation with its principal place of business in New York. The complaint alleges “upon information and belief' that AHMSI “was and is part of a common enterprise with, an affiliate, subsidiary, predecessor, successor, and/or alter ego of and/or to” ABC and a list of other entities, including several with the same or similar names to AHMSI. The complaint asserts that AHMSI “is being sued in these various capacities” (412). Documents supplied by defendant indicate that AHMSI is a Delaware corporation that came into existence in April 2008, and that a Maryland corporation of the same name dissolved on the same date. For present purposes, the Court assumes that the new entity is the successor to the earlier one.

 The Court understands this allegation to mean that AHMSI has not become the owner of either the note or the mortgage. Appended to the complaint is a document labeled “Assignment of Mortgage without Covenants Ind. or Corp.,” bearing the same date as the original loan transaction, executed by ABC, with a blank in the space for identification of the assignee. The document recites that the assignment is “in the secondary mortgage market,” and that the note is assigned with the mortgage.

 The plaintiff has not provided a copy of either the mortgage or the note, or supplied the precise language of the provision to which he refers.

 According to the complaint, AHMSI itself filed for reorganization under chapter 11 of the bankruptcy code in August of 2007. At about that same time, on August 2, 2007, the Massachusetts Banking commissioner issued an order directing “American Home Mortgage Corp. d/b/a American Brokers Conduit,” and several other entities not including AHMSI, all with an address in Melville, New York, to cease and desist ifom engaging in activities as mortgage lender or broker in Massachusetts, based on findings that these entities had failed to meet obligations to fund loans.

 The plaintiff has not supplied a copy of that order. The Court is therefore not privy to its precise terms. The plaintiffs complaint and motion papers leave the Court uncertain whether he contends that the discharge of the debt in bankruptcy protects him from foreclosure of the mortgage. If so, he is incorrect. See First Colonial Bank for Savings v. Bergeron, 38 Mass.App.Ct. 136, 137 (1995).

 The plaintiffs wife is not a party to this action.

 Although this language is less than crystal clear, the Court understands It as assigning both the mortgage and the note, based on the reference to “all obligations therein described [and] the money due and to become due thereon with interest.”

 The complaint does not supply the date when such service occurred.

 The complaint does not indicate whether this communication occurred before or after service of the Land Court’s order of notice.

 The plaintiff filed his initial pleading, captioned “Motion for short order of notice and preliminary injunction,” pro se. That document consisted of four numbered paragraphs, asserting, in substance, that the defendant “employed a series of unfair business practices” in connection with the loan modification process, and “violated the terms of the agreement by raising the principal payment on the loan by some $330.00 [t]wo and a half years into the loan, even though the loan was fixed for [f]ive years," and that “U)f the Defendant is allowed to pursue foreclosure, the plaintiff and his family will be irreparably harmed.” The relief sought consisted of an injunction against foreclosure, an accounting, and an order that the defendant “pursue the loan modification process in good faith.”

 AHMSI contends that it did not receive notice of that hearing, and has never received proper service of the sum *402 mons and complaint. The present motion does not raise lack of service, but states that AHMSI does not waive that defense.

 The complaint makes similar allegations with respect to the plaintiffs wife, but, as noted supra, it does not name her as a plaintiff.

 AHMSI also argues that the facts alleged fail to establish a violation of the statute. The facts provided, with all inferences drawn in the plaintiffs favor, but stripped of conclusions and hyperbole, allege misconduct by the defendant in two respects: (1) it repeatedly invited the plaintiff to apply for modification, but then unreasonably failed to act on his applications, leaving him in constant fear of foreclosure and homelessness; and (2) it demanded increased payments without legal right to do so, causing the plaintiff to suffer financial hardship leading to default, for which it then attempted to foreclose. Whether the plaintiff would succeed in proving either or both of these contentions remains to be seen. At this stage, the Court cannot say that, should he do so, a factfinder could not reasonably conclude that the conduct was unfair and deceptive in violation of G.L.c. 93A, §2.