CHILDREN'S HOSPITAL MEDICAL CENTER *vs.*
CITY OF BOSTON.

Suffolk.    March 6, 1968. — May 3, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Welfare.    Hospital.*

Under G. L. c. 117, § 24A, as amended through St. 1964, c. 515, expenses
    for care furnished by a private hospital in Boston to an indigent child,
    who resided outside the Commonwealth with her indigent parents, dur-
    ing the period of the first of several admissions of her to the hospital
    were "necessarily incurred," and the hospital was entitled to recover
    such expenses from the city, even though it had available a public
    medical institution which could have furnished the care to the child
    which she actually received, where it appeared that when the child
    and her mother arrived by ambulance at the hospital on the first ad-
    mission it had had no previous communication about the child or
    warning of its arrival, that the child was then suffering from extremely
    severe breathing problems and had a tube in her chest, and that con-
    sistently with good medical practice the hospital could not have re-
    fused her admission or transferred her to another medical institution.
    [233]
Under G. L. c. 117, § 24A, as amended through St. 1964, c. 515, expenses
    of care furnished by a private hospital in Boston to an indigent child,
    who resided outside the Commonwealth with her indigent parents,
    during the periods of a second and a third admission of her to the hos-
    pital were not "necessarily incurred," and the hospital was not en-
    titled to recover such expenses from the city, although good medical
    practice dictated continuance at that hospital of the treatment she
    had received there during the period of her first admission, where it
    appeared that at the time of her second admission nearly three months
    after her discharge on the first admission the indigent condition of the
    child and her parents was well known to the hospital, and the city had
    available a public medical institution which, among others, could have
    furnished the same treatment in an equally competent and effective
    manner and to which it would have been reasonable to refer the case.
    [233]
In order to charge a municipality with liability under G. L. c. 117, § 24A,
    as amended through St. 1964, c. 515, for the expense of hospital care
    furnished to "a person in need of public assistance," it is not necessary
    that such person sign the required "notice and request" to the mu-
    nicipal board of public welfare, and a municipality which received such
    a notice and request was not absolved from liability because the docu-
    ment was signed only by the hospital.    [233–234]

CONTRACT. Writ in the Superior Court dated May 10, 1965.

The action was reported by *Sullivan, J.*

*Albert G. Tierney, Jr. (Collette Manoil* with him) for the plaintiff.

*William H. Kerr (Leo J. Dooley,* Assistant Corporation Counsel, with him) for the defendant.

WILKINS, C.J. This action of contract pursuant to G. L. c. 117, § 24A (as amended through St. 1964, c. 515), for reimbursement for the cost of hospitalization furnished at the plaintiff's hospital in Boston to Tracy A. Laytart, a baby living with her parents in Nashua, New Hampshire, is reported without decision by a judge of the Superior Court on a statement of agreed facts, which, together with an auditor's report, "may be submitted as a case stated."

We cull the facts from the statement and the auditor's report and arrange them chronologically.

Tracy was born August 12, 1964. Children's Hospital Medical Center (Children's) provided adequate and necessary hospital care to her on three occasions: (1) October 30 to December 10, 1964; (2) March 3 to March 9, 1965; (3) March 27 to April 3, 1965. On October 29, 1964, she had extremely severe breathing problems, and was admitted to St. Joseph's Hospital in Nashua. There a tracheotomy was performed. A tube inserted in her chest became plugged. On the following day she was transported to Children's on the advice of her attending physician, who felt that the Nashua hospital's facilities were inadequate. He also felt that Children's with its hyperbaric unit could. handle the case most efficiently. Children's is the only hospital in Greater Boston with such a unit. Tracy in fact did not require the unit. The type of care furnished her was not unique to Children's, where she was placed in a croupette, given oxygen and antibiotics, and carefully watched. This was the type of care she needed. It could have been furnished by many hospitals in the area, including Boston City Hospital.

The Nashua physician used good medical judgment in

referring Tracy to Children's but sent her "in a highly unusual manner." He wrote a note to Children's and had Tracy transported there with her mother in an ambulance without previous communication. Neither Tracy nor her parents had prior contact with Children's.

On October 30, 1964, it would not have been good medical practice for Children's to refuse Tracy admission or to transfer her to another hospital. She had labored breathing which diminished the capacity of the lung. On November 5, 1964, the chest opening where the tube had been inserted was enlarged because of a large collection of air in the mediastinum. During the latter part of November the doctors tried taking out the tube to allow her to breathe on her own. From November 21 through December 4, 1964, the tube was periodically removed and reinserted because she could not function without it. On December 6, she was able to function without a tube for the first time since admission, and on December 10 was returned to her home.

The child and her parents had no resources with which to pay her expenses of hospitalization. Upon her admission the mother agreed to pay the entire bill when she should be discharged. Upon discharge, a budget arrangement of $5 a month was made based upon the parents' ability to pay. At the time of the auditor's hearing the budget arrangement was being kept.

On March 3, 1965, the child was again sent to Children's. The admission was medical and nonsurgical. It was good medical practice to continue the treatment at Children's. This was the most convenient and logical hospital to handle the case, but there was no emergency which could not have been handled by any other Boston hospital. It would not have been dangerous to her health to return the child to Nashua, but it would have been "illogical, unreasonable and not in accordance with good medical practice." On March 3, Children's, having knowledge that Tracy was a welfare patient, reasonably could have refused her admission or referred the case to Boston City Hospital. That institu-

tion was fully capable of furnishing the same treatment in an equally competent and effective manner.

On March 27, 1965, the child was X-rayed at Children's outpatient department, and as a result was admitted as an inpatient. She stayed seven days, and was given a "barium swallow" and oxygen. Her temperature returned to normal on the fourth day.

Children's has notified the New Hampshire welfare authorities and has received no payment from them.

Children's "duly notified the City of Boston, in writing, of each admission" respectively on November 2, 1964, and March 5 and 30, 1965. Each notice was addressed to the Board of Public Welfare and contained the following: "The Children's Hospital Medical Center having considered this patient's medical situation and family's financial circumstances, hereby gives notice to you that the above person is being furnished hospital care at this hospital under the provisions" of G. L. c. 117, § 24A. "Notice is hereby given that such care being necessarily incurred under c. 117 . . . is being charged to your municipality henceforth and until in response to this request you make provision for the . . . patient." (Signed), "The Children's Hospital Medical Center, by Community Assistance Office." "There was no signature of the patient or her parents on any of the aforesaid notices." At no time did the Boston welfare or hospital authorities ever remove, seek to remove, or request the removal of Tracy to the Boston City Hospital.

Children's made demand upon the parents by billing them for each admission. Bills are due and payable weekly and in full on discharge. The hospitalization in each admission was necessary and so continued until discharge. Children's made no agreement with the patient, her parents, any governmental agency, or anyone, to treat the patient without fair compensation. Its charter does not require Children's to provide support or hospital care to the patient without fair compensation.

The charges for the respective admissions were: (1) October 30 to December 10, 1964, $1,691.25, and special duty

nurses $770. (2) March 3 to 9, 1965, $269.16. (3) March 27 to April 3, 1965, $314.02, and "take home" medicine $1.25. The total is $3,045.68 of which $125 has been paid on account. If entitled to recover for all three admissions the plaintiff is entitled to $2,920.68 with interest.

The sole issue is whether Children's has met the requirements of G. L. c. 117, § 24A, which reads in material part: "If hospital care is furnished to a *person in need of public assistance* by any *person not liable by law for his support,* the town wherein he resides at the time his hospitalization begins or, if at such time he does not reside in the commonwealth, the town where such care is furnished, shall be liable for the expense of such *care necessarily incurred* under this chapter after *notice and request* made in writing and *signed by such person* to one or more members of the board of public welfare thereof, and *until provision* is made *by them*" (emphasis supplied).[1]

1. The defendant's first contention is that the hospital care furnished the patient was not "necessarily incurred." Reliance is placed in part on early decisions such as *Lamson v. Newburyport,* 14 Allen, 30, 31, and *Rawson v. Uxbridge,* 113 Mass. 47, 48, dealing with liability of municipalities for the support of "paupers." A pauper "is 'one residing or found in any town where he falls into distress, and stands in need of immediate relief.' *Shearer v. Shelburne,* 10 Cush. 3, 5." *Symmes Arlington Hosp. Inc. v. Arlington,* 292 Mass. 162, 163. Stress is laid upon the existence of the Boston City Hospital as a "provision made," analogous to the provision of an almshouse in the cases cited above.[2] It is contended, "If the plaintiff was not willing to take its chance as to the ability of the child or the child's parents to pay for the child's hospitalization, all that the plaintiff had to do was to refuse to admit the child and send it on to the defendant's hospital. . . . So long as the child had hospital

---

[1] As presently amended, the Commonwealth bears this liability. St. 1967, c. 658, § 22.

[2] Boston City Hospital is a public medical institution established and maintained by the city "for the reception of persons who by misfortune or poverty may require relief during temporary sickness." St. 1858, c. 113, § 1.

care, the defendant was under no obligation to remove her to the defendant's hospital." These contentions are made in the teeth of the agreed fact: "The hospitalization of the patient on each admission was necessarily incurred and continued until the date of the patient's discharge." We are, in effect, asked to relieve the city of its agreement on the ground that its making should be "deemed improvident or not conducive to justice." See *Loring* v. *Mercier*, 318 Mass. 599, 601.

We need not deal with this request so far as the first admission is concerned, because the specific facts show that the services then furnished were "necessarily incurred." When the mother and child arrived by ambulance at Children's without warning on October 30, 1964, the child, consistently with good medical practice, could not have been put out on the sidewalk or been transferred to another hospital. These conclusions are amply evident from the case stated.

A majority of the court do not reach the same conclusion as to the second and third admissions. At the time of the second admission the indigent condition of the child and her parents was well known to Children's. Although it was good medical practice to continue the treatment at Children's, which was the most convenient and logical hospital to handle the case, this was not adequate ground to create liability on the part of the city. It would have been reasonable to refuse her admission and refer the case to the Boston City Hospital. The third admission is an even weaker case for holding the city. The expenses of the second and third admissions were not necessarily incurred.

2. A second argument of the city is that the person in need of assistance did not sign the "notice and request" to the Board of Public Welfare. Section 24A is admittedly ambiguous. There is uncertainty as to whether the signature on the required notice is to be that of the person in need of assistance or that of the person rendering aid. It is our duty to give the section a reasonable construction. *Massachusetts Turnpike Authy* v. *Commonwealth*, 347 Mass. 524, 528.

As applied to the case at bar, the city's argument means that the statute requires the signature of a child, notwithstanding that her age at the time of the first admission was two and one-half months.  In general, this construction would exclude care to a person in a coma or to one of mental incapacity who is incapable of signing his name.  The confusing phrase, "signed by such person," was inserted by St. 1964, c. 515.   The defendant definitely attributes this change to a reason founded upon a derogatory estimate of the ethical standards of hospitals, namely, that otherwise "a hospital could seek public assistance for furnishing care to a person without that person's knowledge." It would, of course, be larceny intentionally to collect twice for the same services.  G. L. c. 266, § 30.  See *Commonwealth* v. *Louis Constr. Co. Inc.* 343 Mass. 600, 603–605; *Commonwealth* v. *Iannello,* 344 Mass. 723, 734; *Commonwealth* v. *Kiernan,* 348 Mass. 29, 46; *Commonwealth* v. *Gardinier,* 350 Mass. 331. We cannot believe that the legislative intent was to require the impossible of some indigents for the sole purpose of preventing dishonesty by hospitals.  See *Massachusetts Gen. Hosp.* v. *Revere,* 346 Mass. 217, 223.  We accept the more reasonable interpretation that the "person in need of public assistance" is not required to sign.  If the legislative intent be otherwise, a correcting amendment may be enacted.

3. The plaintiff is entitled to recover $2,461.25, with interest from the date of demand, for the cost of hospital care and special duty nurses furnished during the first admission less any amounts paid by Tracy's parents which may have been applied to the expenses of the first admission.

*So ordered.*