## MARGIE J. CONLEY *vs.* MICHAEL N. ROMERI.

No. 02-P-303.

Suffolk. October 8, 2003. - April 14, 2004.

Present: CYPHER, COWIN, & MILLS, JJ.

*Emotional Distress. Negligence,* Emotional distress. *Fraud. Intentional Conduct. Assault and Battery.*

In a civil action arising out of a romantic relationship between the plaintiff and the defendant, the plaintiff failed to establish that the defendant had any legally cognizable duty to the plaintiff that would give rise to a claim for negligent infliction of emotional distress [801]; likewise, the plaintiff failed to state a claim for fraud based on the defendant's alleged misrepresentation that he was capable of fathering children and willing to do so, in that no recognized standard existed to assess the materiality to the plaintiff of the alleged misrepresentation [801-803].

In a civil action arising out of a romantic relationship between the plaintiff and the defendant, the defendant demonstrated that the plaintiff had no reasonable expectation of proving the requisite level of extreme and outrageous conduct to sustain a claim of intentional infliction of emotional distress based on his revelation that he had had a vasectomy, and therefore, the judge properly granted summary judgment in favor of the defendant. [803-805]

This court concluded as a matter of law that the failure of the defendant in a civil action to reveal to the plaintiff, with whom he was engaged in a romantic relationship, that he had had a vasectomy did not vitiate her consent to sexual relations, and therefore, such sexual relations did not constitute a battery. [805-806]

CIVIL ACTION commenced in the Superior Court Department on June 1, 1999.

A motion to dismiss was heard by *Thomas E. Connolly,* J., and judgment granting partial dismissal of the complaint was entered by him; the remaining claims were heard by *Elizabeth M. Fahey,* J., on a motion for summary judgment.

*Richard J. Bombardo* for the plaintiff.

*Robert J. Rutecki* for the defendant.

CYPHER, J. The plaintiff appeals from the dismissal in the Superior Court of her complaint alleging tortious conduct by the defendant during their romantic relationship. She claims that, about eight months after they met and became involved, the defendant told her he previously had had a vasectomy, a revelation that caused her emotional distress. She asserted she had been misled into the relationship with the defendant because he knew she had little time in which to become a biological mother, and she would not have become intimate with him had she known of the vasectomy. The plaintiff's complaint included allegations of intentional and negligent infliction of emotional distress, fraud, and assault and battery.[1]

*Background.* The essential facts are not in dispute. The parties began their relationship in June, 1996. Then in their early forties, both had been divorced. The plaintiff recently had started her own company and the defendant was a director of a management consulting firm. The defendant had four children from his previous marriage; the plaintiff had none. In a discussion in July, 1996, about the future of their relationship, the plaintiff expressed her desire to have a family, and the defendant responded that a fortune teller had told him he would have six children, and that the plaintiff should not "worry" about that.

Feeling assured, the plaintiff chose to remain in and work on the relationship. The parties became sexually intimate in September, 1996. About one month later, the defendant, stating that the plaintiff "should be having [her] period now," asked whether he had "gotten [her] in trouble." In February, 1997, the plaintiff claims, the defendant revealed, "out of the blue," that

---

[1]The plaintiff began this action by filing a verified complaint in the Superior Court in June, 1999, alleging negligent infliction of emotional distress, fraud, and intentional infliction of emotional distress. A motion judge allowed the defendant's motion to dismiss the first two counts pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), and denied the motion with respect to the intentional infliction of emotional distress claim, indicating that the plaintiff had pleaded the "correct elements" and that a "motion for summary judgment may lie." The assault and battery claim subsequently was added in an amended complaint filed on November 22, 1999.

In October, 2001, another Superior Court judge, acting on the defendant's motion pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), allowed summary judgment in favor of the defendant on the intentional infliction of emotional distress and assault and battery claims.

he had had a vasectomy in 1993. The plaintiff claims that the defendant's disclosure emotionally devastated her, that she suffered a major depressive disorder and incurred medical expenses, and that she was unable to reverse the economic position of her company.

*Discussion.* 1. *Negligent infliction of emotional distress.* To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Payton* v. *Abbott Labs*, 386 Mass. 540, 557 (1982). It is fundamental that there must be a showing of a duty of care owed to the plaintiff, because "[t]here can be no negligence where there is no duty." *McHerron* v. *Jiminy Peak, Inc.*, 422 Mass. 678, 681 (1996), quoting from *Aetna Cas. & Sur. Co.* v. *Fennessey*, 37 Mass. App. Ct. 668, 673 (1994). "Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000), and cases cited.

The plaintiff asserts only that, in the course of their relationship, the defendant created a duty of honesty, but does not identify any legally cognizable duty between parties in a dating relationship, nor are we aware of any legally defined duty applicable in these circumstances. Accordingly, we conclude the plaintiff has not stated a claim upon which relief may be granted. See *Quinn* v. *Walsh*, 49 Mass. App. Ct. 696, 700-701 (2000).

2. *Fraud.* The essence of the plaintiff's fraud allegation is that the defendant misrepresented[2] that he was capable and willing to father children for the purpose of inducing her to stay in a relationship with him. She relies significantly on the material-

---

[2]For a discussion of the interrelationship between fraud, deceit, and misrepresentation, see Prosser & Keeton, Torts § 105, at 725-736 (5th ed. 1984).

ity to her of that alleged misrepresentation.[3] To resolve the plaintiff's allegation that the defendant's failure to disclose his vasectomy was the material factor in determining his liability would require us to assess the emotions, expectations, and commitments inherent in a developing romantic relationship. We are aware of no jurisprudential standards that can be applied in such circumstances.

The comments of the court in *Stephen K. v. Roni L.*, 105 Cal. App. 3d 640 (1980), are instructive and persuasive. In that case, the court rejected the plaintiff's tort claim seeking damages based on his claim of reliance on the defendant's assurances that she was taking birth control pills when he engaged in sexual relations with her, from which the birth of a child was a consequence. *Id.* at 641-643. The court stated: "The claim of Stephen is phrased in the language of the tort of misrepresentation. Despite its legalism, it is nothing more than asking the court to supervise the promises made between two consenting adults as to the circumstances of their private sexual

---

[3]The plaintiff's claim of fraudulent misrepresentation appears to be based on the Restatement (Second) of Torts § 538 (1977):

> "(1) Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material.

> "(2) The matter is material if

> ". . .

> "(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."

See Restatement (Second) of Torts § 525 (1977) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to [her] by [her] justifiable reliance upon the misrepresentation"). See generally Larson, "Women Understand So Little, They Call My Good Nature 'Deceit': " A Feminist Rethinking of Seduction, 93 Colum. L. Rev. 374 (1993). Larson discusses the historic focus of fraud on economic interests, but notes that misrepresentation has been "expanded to protect a broad range of both dignitary and economic interests." *Id.* at 416. Also, the author states that "[t]o date no court adjudicating a sexual fraud action has cited the traditional rule limiting fraud damages to economic loss as the basis for its decision to deny a damages claim for emotional injury." *Id.* at 460 n.372.

conduct." *Id.* at 644-645. The court also commented: "Claims such as those presented . . . in this case arise from conduct so intensely private that the courts should not be asked to nor attempt to resolve such claims. . . . In summary, although Roni may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor." *Id.* at 643.

We agree, there is no recognized standard of conduct by which we reasonably can assess the materiality of the alleged misrepresentation in a context such as the present case. Accordingly, we think the plaintiff fails to state a claim upon which relief may be granted.

3. *Intentional infliction of emotional distress.* The plaintiff claims that the defendant knew she would not have remained in the relationship had she known of his vasectomy because she was approaching the biological end of her childbearing capability, and that he knew emotional distress would be the likely result of his conduct. She alleges his conduct was extreme and outrageous.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff "must establish '(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) [that] the actions of the defendant were the cause of the plaintiff's distress, and (4) [that] the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.' " *Quinn* v. *Walsh*, 49 Mass. App. Ct. at 706, quoting from *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997).

We review the record to put in context the defendant's revelation, "out of the blue," that he previously had had a vasectomy. In her affidavit submitted in opposition to the defendant's motion for summary judgment, the plaintiff comments:

"While admittedly I did not accept the statements about

what the . . . fortune teller had told [the defendant] as proof that he was going to have two more children, it was crystal clear to me that he was offering this information to lead me to believe two things which he knew at the time were untrue 1) that he was physically capable of having more children presently and 2) he desired to have more children. Both of these facts were untrue, but I did not find out they were untrue until February 1997."

The plaintiff also cites the defendant's asking her if she were pregnant after they became sexually intimate as leaving little doubt in her mind that he was capable of fathering another child. Furthermore, she states that on several occasions the defendant indicated that his first wife had "tricked" him into having another child, calling that a "betrayal," and told the plaintiff that it was very important that she (the plaintiff) not betray him. Accordingly, the plaintiff claims all of these statements led her to conclude that the defendant had the same goals for the relationship as she did. The record also shows that when the parties became sexually intimate, they did not discuss any methods of birth control, the defendant did not use condoms, and the plaintiff had been taking birth control pills but did not inform the defendant. In these circumstances, the plaintiff's conclusion that she and the defendant had the same goals in the relationship generally may have been justified, but nothing in these facts indicates that the defendant's conduct was extreme and outrageous.

The plaintiff's growing belief that the defendant was capable of fathering children provides the context for her reaction to the defendant's revelation that he previously had had a vasectomy. The defendant apparently then recognized that the plaintiff was attaching seriousness to that revelation and asked whether she was upset because he had not told her, or because he actually had undergone the procedure. He also commented, "You really didn't want kids at this stage of your life, did you?" The parties continued dating and were intimate until April, 1997, when the defendant said he had met another woman and the plaintiff broke off the relationship.

Even if the impact of the defendant's revelation was intended, and even if the defendant had created false expectations about

his future relationship with the plaintiff, nothing in his conduct throughout the relationship can be said to rise to the "high order of reckless ruthlessness or deliberate malevolence" required for a showing of conduct that is "intolerable." *Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 8 (1994), citing *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976), and *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99 (1987).

Moreover, the relationship of the parties continued until the plaintiff broke it off when she felt betrayed after the defendant told her of his interest in another woman. "It does not lie within the power of any judicial system to remedy all human wrongs. . . . [M]any wrongs which in themselves are flagrant — ingratitude, avarice, broken faith, brutal words, and heartless disregard of the feelings of others — are beyond any effective legal remedy . . . ." Prosser & Keeton, Torts § 4, at 23 (5th ed. 1984).[4] "Out of the human condition may arise a myriad of emotional responses including anger, sadness, anxiety, and distress, many of which are attributable to the conduct of others. While perhaps blameworthy, such conduct is often not legally compensable."[5] *Quinn* v. *Walsh*, 49 Mass. App. Ct. at 706.

We conclude, therefore, that the defendant demonstrated that the plaintiff had no reasonable expectation of proving the requisite level of extreme and outrageous conduct, an essential element of her case, and therefore was entitled to summary judgment.

4. *Battery.* The plaintiff alleges that the defendant's failure to reveal that he had had a vasectomy was a fraud that vitiated her consent to sexual relations. Such sexual relations, thus, constituted a battery.[6]

---

[4]We also conclude that the plaintiff's additional allegations that the defendant told his children and others that she was stalking him and that she had carved her initials in the front door of his home, even if false, do not constitute an actionable level of intolerable conduct.

[5]Amatory torts (seduction, alienation of affection, and criminal conversation) have been abolished. *Quinn* v. *Walsh*, 49 Mass. App. Ct. at 701-702 & nn.8,9. "The derisive term 'heartbalm' attached to the breach of promise action is an indication that public policy no longer considers money damages appropriate for what is perceived as only an ordinary broken heart." Note, Heartbalm Statutes and Deceit Actions, 83 Mich. L. Rev. 1770, 1778 (1985).

[6]The plaintiff labeled this claim as "assault and battery," and repeatedly uses those terms. Her allegations, however, amount to the tort of battery. As-

There is no indication that the defendant's statement in July, 1996, after several dates, that he had been told by a fortune teller that he would have six children was made with the intent to induce the plaintiff to have sexual intercourse. At that stage of their relationship, such a statement may be seen only as an inducement to continue dating. There were no discussions between the parties about having children together, or of marriage. Moreover, the plaintiff's feeling that she wasted time with the defendant because her biological clock was running does not constitute a battery.[7] We conclude, as a matter of law, that the plaintiff's consent was not vitiated, and that summary judgment properly was allowed for the defendant.

*Judgments affirmed.*

---

sault is a separate tort involving an act which puts another in reasonable apprehension of imminent harmful or offensive contact, that is, an attempted battery or an immediately threatened battery. Restatement (Second) of Torts § 21 (1965).

[7]The plaintiff's reliance on cases such as *Barbara A.* v. *John G.*, 145 Cal. App. 3d 369 (1983), is misplaced. In that case, Barbara A. relied on assurances of John G.'s sterility, and subsequently suffered injury from an ectopic pregnancy. *Id.* at 373. The court determined that the plaintiff stated a cause of action for battery and deceit because her consent to intercourse was invalidated by John G.'s false representation of his "procreative inability." *Id.* at 374-376. The court distinguished *Stephen K.* v. *Roni L.*, 105 Cal. App. 3d 640 (1980), on the basis that Stephen K. was essentially seeking damages for "wrongful birth," which is contrary to public policy, whereas Barbara A. sought damages for physical injury to her own body. *Barbara A.* v. *John G., supra* at 378-380.

See generally Murray & Winslett, The Constitutional Right to Privacy and Emerging Tort Liability for Deceit in Interpersonal Relationships, 1986 U. Ill. L. Rev. 779 (1986), where the authors describe cases arising from two basic situations: transmission of a sexual disease, and an unexpected, unwanted pregnancy. The *Barbara A.* case arose from the second situation. See *id.* at 785-787.