NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1479                                            Appeals Court

SUSAN SHEA  vs.  MICHAEL CAMERON.

No. 16-P-1479.

Essex.     October 4, 2017. - February 9, 2018.

Present:  Agnes, Sacks, & Lemire, JJ.

Practice, Civil, Report, Summary judgment, Stipulation, Fraud.
    Divorce and Separation, Annulment, Jurisdiction.  Probate
    Court, Divorce.  Jurisdiction, Divorce proceedings.  Fraud.
    Emotional Distress.  Undue Influence.  Unjust Enrichment.

Civil action commenced in the Superior Court Department on
July 24, 2014.

The case was heard by Timothy Q. Feeley, J., on a motion
for summary judgment, and the case was reported by him to the
Appeals Court.

John Taylor for the plaintiff.
Mikalen E. Howe (Alan K. Posner also present) for the
defendant.

LEMIRE, J.  This appeal concerns whether a defendant's

alleged fraudulent inducement to marry constitutes a valid civil

cause of action.  The plaintiff, Susan Shea, and the defendant,

Michael Cameron, were married before receiving a judgment of

annulment which incorporated their joint stipulation of Cameron's fraud. Following the annulment, Shea filed a civil action relating to Cameron's marriage fraud in Superior Court. Cameron filed counterclaims alleging fraud by Shea regarding entry of the stipulation and annulment. Cameron moved for summary judgment on all of Shea's claims. After granting Cameron's motion for summary judgment, the judge reported his order to this court pursuant to Mass.R.Civ.P. 64(a), as amended, 423 Mass. 1403 (1996), and stayed Cameron's counterclaims. We affirm.

Background. Shea began a consensual romantic relationship with Cameron in June, 2005. By October, 2005, Cameron had moved into Shea's home, and soon thereafter, the two became engaged. Shea and Cameron married on September 22, 2007. In 2010, Shea transferred title to her home from herself individually to Shea and Cameron as joint tenants and Cameron was added to the mortgage. Over the course of their relationship, Shea and Cameron exchanged money, shared bank accounts, and worked together professionally.

In 2011, Shea discovered that Cameron was having an affair and subsequently filed for divorce on the grounds of irretrievable breakdown. On April 30, 2012, Shea withdrew her complaint for divorce and filed a complaint for annulment. At a deposition related to the annulment proceeding, Cameron admitted

to being "unable to love [Shea] very early in the marriage" and that he did not ever believe that Shea was his "one true love."

On June 7, 2013, Shea and Cameron entered into a joint stipulation of annulment based on Cameron's fraud, ending the marriage ab initio.[1]  Unbeknownst to Cameron, Shea filed a complaint in Probate and Family Court on June 6, 2013, related to this stipulated fraud.  Immediately following the entry of the judgment of annulment, Shea served Cameron with her complaint as he left the court room.

Shea's complaint was dismissed by the Probate and Family Court for lack of subject matter jurisdiction.  Shea then filed the same claims in Superior Court.  Shea's theory of recovery on all claims is related to Cameron's false claims of love, Cameron's emotionally harmful conduct during their relationship, and Cameron's improper use of their shared finances.  Cameron's counterclaims allege that but for Shea's deliberate concealment of her claims, he would not have entered into the stipulation of annulment.

The judge entered summary judgment in favor of Cameron on all eight of Shea's claims.  In his memorandum and decision, the judge accepted that Cameron made misrepresentations "about the

---

[1] The complete joint stipulation reads as follows:  "The parties, Susan E. Cameron, Plaintiff, and Michael J. Cameron, Defendant, agree to an annulment of marriage on the grounds of Defendant's fraud as provided by M.G.L. Chapter 207, § 14."

genuineness of his love and commitment to Shea," but concluded as a matter of law that the court was unable to intrude into private and personal relationships and provide remedy for the alleged harms. Following the entry of summary judgment the judge reported his decision to this court under Mass.R.Civ.P. 64(a) as an interlocutory finding and stayed Cameron's counterclaims.

Report. As a threshold matter, we consider the propriety of the report on which this case comes before us. A Superior Court judge is authorized to report a case when "an interlocutory finding or order made by [him] so affects the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings in the trial court." Mass.R.Civ.P. 64(a). "Interlocutory matters should be reported only where it appears that they present serious questions likely to be material in the ultimate decision, and that subsequent proceedings in the trial court will be substantially facilitated by so doing." John Gilbert Jr. Co. v. C.M. Fauci Co., 309 Mass. 271, 273 (1941). See Cooney v. Compass Group Foodservice, 69 Mass. App. Ct. 632, 635 (2007).

Facially, Shea's eight claims in her amended complaint and Cameron's five counterclaims appear inextricable. However, a closer inspection into the underlying factual circumstances show that the reported question as to Shea's claims is not material

to the stayed counterclaims. Shea's claims rest on the factual circumstances surrounding Cameron's alleged amatory torts, alleged emotional harm, and alleged unjust dispossession of property. On the other hand, Cameron's counterclaims are based almost entirely on allegations regarding the parties' stipulation of fraud and the resulting judgment of annulment.[2] Any guidance to the Superior Court on the reported issue will not materially impact the decision on the stayed counterclaims and we have some doubt as to whether this case is appropriate for a report under Mass.R.Civ.P. 64(a).[3] See Cusic v. Commonwealth, 412 Mass. 291, 293-294 (1992). However, as the parties have fully briefed the issue and the answers are reasonably clear, this court can express its view. See, e.g., Brown v. Guerrier, 390 Mass. 631, 632-633 (1983); Morrison v. Lennett, 415 Mass. 857, 859 (1993).

Standard of review. Summary judgment is appropriate where there are no genuine issues of material fact and the moving

---

[2] Cameron's pending counterclaims are (1) fraud by omission, (2) misrepresentation, (3) breach of fiduciary duty and duty to act in good faith with fair dealing, (4) unjust enrichment, and (5) partition of real estate.

[3] We do not question the judge's finding that an appellate decision will affect how the parties proceed on the counterclaims. However, courts should be circumspect in reporting a civil interlocutory question. See Globe Newspaper Co. v. Massachusetts Bay Transp. Authy. Retirement Bd., 412 Mass. 770, 772 (1992).

party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). See also Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). We review a decision to grant summary judgment de novo, construing all facts in favor of the nonmoving party. See Miller v. Cotter, 448 Mass. 671, 676 (2007). "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if [it] demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis, supra. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Hence, the moving party may satisfy its burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner, supra at 809.

Discussion. 1. Stipulation of fraud.[4] Before reaching Shea's substantive claims, we address the effect, if any, of the

---

[4] Any argument that the judgment of annulment has preclusive effect on the current litigation is in error. See Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988) (explanation of terminology and doctrines of claim and issue preclusion that

prior stipulation of fraud on our de novo review. Generally, stipulations of fact serve an important function for the efficiency of the court in ruling on motions for summary judgment. See Mitchell v. Walton Lunch Co., 305 Mass. 76, 80 (1940). "[S]uch stipulations are binding on the parties . . . and respected by the courts, unless a court determines that to do so would be improvident or not conducive to justice." Goddard v. Goucher, 89 Mass. App. Ct. 41, 45 (2016), quoting from Loring v. Mercier, 318 Mass. 599, 601 (1945). See Mass. G. Evid. § 611(g)(1) (2017). Factual stipulations from prior trials may even be considered as evidence in subsequent litigation. See Household Fuel Corp. v. Hamacher, 331 Mass. 653, 656-657 (1954), citing Wigmore on Evidence § 2593 (3d ed. 1940).

In contrast to stipulations of fact, courts are not bound by stipulations of law, especially when the legal stipulations

---

comprise res judicata). Here, we decline to consider the doctrine of claim preclusion when the underlying claim is an action for annulment for the same reasons justifying the Supreme Judicial Court's analysis declining to apply claim preclusion in a tort suit when the underlying action is a divorce proceeding. See id. at 23-25. Additionally, where the only basis for the judgment of annulment is the stipulation between the parties, that final judgment cannot have preclusive effect under collateral estoppel. See Hartford v. Hartford, 60 Mass. App. Ct. 446, 451 (2004), quoting from Restatement (Second) of Judgments § 27, comment e (1982) ("[a]n issue is not actually litigated if it is the subject of a stipulation between the parties").

are based on incomplete and misleading facts, incorrect applications of the law, or are self-serving. See Goddard, supra at 46-47. Accordingly, treating the stipulation of Cameron's fraud in the annulment case as a legal conclusion would not be binding in the instant case. See Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289 (1917) ("The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property . . . . No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard" [quotation omitted]).

Even if the prior stipulation is a mixed issue of fact and law, any factual component here must also be disregarded. See Goddard, supra at 45-46. Factual stipulations are context specific and "[t]he scope of the stipulation is determined by the circumstances in which it is made and the nature of the proof required by the issues raised." Costello v. Commissioner of Rev., 391 Mass. 567, 570 (1984). Here, the one-sentence stipulation omits all necessary information or context concerning the fraud. Under these circumstances, we conclude that any factual component to the stipulation must also be set aside as "improvident or not conducive to justice." Children's Hosp. Medical Center v. Boston, 354 Mass. 228, 233 (1968). See Huard v. Forest St. Housing, Inc., 366 Mass. 203, 208-209

(1974).  Therefore, neither the legal nor factual components of the parties' stipulation to Cameron's fraud impact our de novo review of the judge's grant of summary judgment.

2.  Shea's substantive claims.  Shea's amended complaint asserts eights claims which can be categorized by their underlying factual basis.  First, the claims of fraud and deceit (count II), misrepresentation (count IV), and battery (count VIII) are each based on alleged false professions of love which induced Shea to enter into the romantic relationship and annulled marriage.  The claims of negligent infliction of emotional distress (count III) and intentional infliction of emotional distress (count V) are each based on conduct allegedly committed by Cameron during the annulled marriage which caused Shea emotional and mental harm.  Finally, the claims of exertion of undue influence (count I), money had and received (Count VI), and unjust enrichment (count VII) are each based on Cameron's use of the parties' shared finances.  We address each type of claim in turn.

a.  Count II, count IV, and count VIII.  General Laws c. 207, § 47A, inserted by St. 1938, c. 350, § 1 (also referred to as the Heart Balm Act),[5] states that a "[b]reach of contract

---

[5] The Heart Balm Act refers to both G. L. c. 207, § 47A, and G. L. c. 207, § 47B.  This opinion primarily addresses § 47A.  However, the legislative policy that underlies § 47B, which abolished the common law actions for alienation of affection and

to marry shall not constitute an injury or wrong recognized by law, and no action, suit or proceeding shall be maintained therefor."  The term "heart balm" itself reflects the Legislature's public policy decision to no longer consider judicial remedy appropriate for what is only "an ordinary broken heart."  Conley v. Romeri, 60 Mass. App. Ct. 799, 805 n.5 (2004), quoting from Note, Heartbalm Statutes and Deceit Actions, 83 Mich. L. Rev. 1770, 1778 (1985).[6]  The Heart Balm Act marks a turning point in our view of marriage as primarily a property transaction where breach of a promise to marry can result in monetary damages, to instead recognizing that the decision to marry is a fundamental right that can be declined without sanction.  See Obergefell v Hodges, 135 S. Ct 2584, 2595-2596 (2015).  See also Diaz v. Eli Lilly & Co., 364 Mass. 153, 154-155 (1973) (providing history of heart balm actions in Massachusetts).

---

criminal conversation, is the same as the stated policy that underlies § 47A, and many States do not separate the provisions. See, e.g., Cal. Civil Code § 43.5 (West 2007); N.J. Stat. Ann. § 2A:23-1 (West 2010); N.Y. Civ. Rights Law § 80-a (McKinney 2009); Wis. Stat. Ann. § 768.01 (West 2009).  For a detailed discussion on the history of Heart Balm Acts and the prohibition of amatory torts in the United States, see The Legal Ways of Seduction, 48 Stan. L. Rev. 817 (1996).

[6] Shea's argument that this court's Conley decision was in error because it relied on overturned California case law is without merit.  See Conley, supra at 806 n.7.

Not only does G. L. c. 207, § 47A, preclude claims of pure breach of a marriage contract, it also "abolished any right of action, whatever its form, that was based upon such a breach," including "[a]ctions in tort for fraud." Thibault v. Lalumiere, 318 Mass. 72, 75 (1945). This broad reading of § 47A furthers the legislative intent that courts should not "explore the minds of" consenting partners in order to "determine their sincerity." A.B. v. C.D., 36 F. Supp. 85, 87 (E.D. Pa. 1940). See Thibault, supra at 74-75; Quinn v. Walsh, 49 Mass. App. Ct. 696, 705 (2000).

Unlike in a traditional heart balm action, Shea does not assert that Cameron wronged her by not marrying her; rather, she asserts that Cameron wronged her in fraudulently inducing her to marry him. This argument rests on the principle that Cameron's express and implied promises of love were knowingly false, and that but for these professions, she would not have entered into the romantic relationship which resulted in the alleged harm suffered. Without the contract of marriage that followed the alleged false statements, Shea's claims of fraud would have no basis. We conclude that Shea's artful pleadings fail to hide the fact that these claims, based on events that occurred prior

to the marriage, are precluded under G. L. c. 207, § 47A, as a matter of law.[7]  See A.B., supra.

Additionally, Shea's claim of battery, while not precluded under the Heart Balm Act, fails because any alleged fraud by Cameron was legally insufficient to vitiate Shea's consent to sexual intercourse.  See Conley, supra at 805-806.  We review Shea's remaining claims de novo under different factual and legal theories.

b.  Count III and count V.  Shea also alleges that the conduct of Cameron during the course of their romantic relationship caused Shea emotional distress.  Construing all facts and inferences in favor of Shea, she fails to prove an essential element of both intentional and negligent infliction of emotional distress.

i.  Intentional infliction of emotional distress.  A claim of intentional infliction of emotional distress requires:  "(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely

_____

[7] The Heart Balm Act and this opinion do nothing to abrogate the abolition of spousal immunity in Massachusetts.  See Lewis v. Lewis, 370 Mass. 619, 621-622 (1976).  For example, G. L. c. 209 specifically authorizes rights of action based on contract between spouses so long as the contract is not the marriage itself.  See, e.g., Okoli v. Okoli (No. 2), 81 Mass. App. Ct. 381, 390-391 (2012) (allowing claim of fraud to survive motion to dismiss against former spouse for entry into in vitro fertilization contract).

result of his conduct, . . . (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) [that] the actions of the defendant were the cause of the plaintiff's distress, and (4) [that] the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." Quinn, supra at 706, quoting from Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997). Given the high standard required to show "extreme and outrageous" conduct, there is nothing in this record, viewed in the light most favorable to Shea, that can defeat the summary judgment motion. See Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994) (outrageous conduct means "a high order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable").

As previously noted by this court, an adulterous affair like the one alleged here, "even one which is intended to, or which the actor should have known would, cause emotional harm" cannot be deemed "extreme and outrageous." Quinn, supra at 708. Equally unavailing of legal remedy is a claim of intentional infliction of emotional distress based on failure to disclose or intentional concealment of past sexual or romantic history to a consensual romantic partner prior to entry into the relationship, "even if the defendant had created false

expectations about his future relationship with the plaintiff." Conley, supra at 804-805. A thorough review of the record reveals no other conduct which could not be categorized as "ingratitude, avarice, broken faith, brutal words, and heartless disregard of the feelings of others," which although blameworthy, are not legally compensable. Id. at 805, quoting from Prosser & Keeton, Torts § 4, at 23 (5th ed. 1984). We conclude that Cameron was entitled to summary judgment on this claim.

ii. Negligent infliction of emotional distress. "To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove: '(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.'" Conley, supra at 801, quoting from Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). "[P]laintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims" were likely genuine. Sullivan v. Boston Gas Co., 414 Mass. 129, 137-138 (1993). The record here is bereft of physical harm manifested by objective symptomatology, and thus, summary

judgment on this count was properly granted to Cameron.[8]  See

Garrity v. Garrity, 399 Mass. 367, 369 (1987).

    c.  Count I, count VI, and count VII.  Shea brings three

individual claims to attempt to recover damages for the exchange

of money and her home between Shea and Cameron over the course

of their relationship.  The underlying factual basis for the

three claims is that Shea would not have relinquished ownership

rights of her real or personal property if not for the coercive

or fraudulent conduct of Cameron.  The record fails to provide a

sufficient basis for either theory, even viewed in the light

most favorable to Shea.

    i.  Money had and received and unjust enrichment.[9]  "Unjust

enrichment is defined as 'retention of money or property of

another against the fundamental principles of justice or equity

and good conscience.'"  Santagate v. Tower, 64 Mass. App. Ct.

324, 329 (2005), quoting from Taylor Woodrow Blitman Constr.

___

[8] Both Conley, supra at 806 n.7, and Doe v. Moe, 63 Mass.
App. Ct. 516, 521 n.6 (2005), contemplate the possibility of a
negligent infliction of emotional distress claim based upon the
negligent transmission of a sexually transmitted disease between
consensual sexual partners.  Without further discussion, we note
that by Shea's own testimony she admits to receiving an
inconclusive diagnosis of a sexually transmitted disease.

[9] Money had and received was originally an equitable claim
for unjust enrichment specific to money and credit.  See Cobb v.
Library Bureau, 268 Mass. 311, 316 (1929).  The current doctrine
of unjust enrichment is identical and applies equally.  See
Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 643 (2013).

Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982). Unjust enrichment is also recognized as the traditional claim for a party who has been deprived of land through fraud. See State St. Bank & Trust Co. v. Beale, 353 Mass. 103, 105 (1967). We have extended this principle to fraud between former spouses for conduct during the marriage. See Demeter v. Demeter, 9 Mass. App. Ct. 860 (1980). However, "[t]he fact that a person has benefited from another is not of itself sufficient to require the other to make restitution therefor." Keller v. O'Brien, 425 Mass. 774, 778 (1997) (quotation omitted). Here, none of the exchanges of money or property between Shea and Cameron can be considered unjust. See Santagate, supra at 336 (standard for unjust enrichment is based on reasonable expectations of party). Simply showing that Cameron's tax payments, son's tuition payments, and other expenses came out of the parties' joint accounts is insufficient context to satisfy the elements of unjust enrichment especially when those same records show payments to shared interests. Accordingly, Shea could not have satisfied her burden at trial and the claims were properly disposed of on summary judgment.

ii. Undue influence. "In order adequately to establish a claim . . . for undue influence, a plaintiff must establish that the defendant overcame the will of the grantor. . . . Undue influence involves some form of compulsion which coerces a

person into doing something the person does not want to do." Tetrault, 425 Mass. at 464. We find nothing in the record before us to show dominion over Shea's mind suggestive of undue influence. Rather, the undisputed evidence shows that Shea was in full command of her personal affairs and was neither ill, dependent, nor enfeebled at the time of the transfer of real or personal property to Cameron. See Collins v. Huculak, 57 Mass. App. Ct. 387, 394 n.8 (2003). Without any basis for the claim of coercion or fraud sufficient to overcome her will, the judge properly granted summary judgment.

3. Conclusion. As evidenced here, not all human actions in the context of the dissolution of a marriage have an avenue for legal recourse, no matter how much anger, sorrow, or anxiety they cause. See Okoli v. Okoli (No. 2), 81 Mass. App. Ct. 386, 389 (2012). This court respects the difficult work done by the Probate and Family Court in disentangling marital relationships. The process of divorce provides an avenue for alimony and the equitable distribution of property. By voluntarily withdrawing her complaint for divorce and entering into a stipulation and judgment of annulment, Shea chose to forgo that process and her claims could not survive in Superior Court. For the reasons stated above, we uphold the judge's grant of summary judgment against Shea on each count.

Judgment affirmed.