NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-249

CHRISTOPHER D'ERRICO

vs.

50 PLEASANT REALTY, LLC, & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Christopher D'Errico, filed a complaint in the Superior Court against defendants 50 Pleasant Realty, LLC; Ralph Di Girolamo, individually and as trustee of the Highland Commons Realty Trust; and Richard Di Girolamo, individually and as trustee of the Highland Commons Realty Trust, alleging that the defendants failed to pay him a brokerage fee to which he was entitled after he procured a buyer for the defendants' property. The plaintiff's claims included breach of contract, fraud,

---

[1] Ralph DiGirolomo, individually and as trustee of the Highland Commons Realty Trust, and Richard DiGirolamo, individually and as trustee of the Highland Commons Realty Trust.  As is our custom, we spell the defendants' names as they appear in the caption of the complaint.  We note, however, that the record otherwise reflects that the individual-trustee defendants spell their last name "Di Girolamo."

unjust enrichment, and violation of G. L. c. 93A. The defendants moved for summary judgment on all the plaintiff's claims; the plaintiff did not oppose the defendants' motion, but cross-moved for summary judgment on only his breach of contract claim. A judge allowed the defendants' motion for summary judgment[2] and denied the plaintiff's cross motion. On appeal, the plaintiff argues that summary judgment in his favor should have been allowed on the breach of contract claim because (1) the defendants waived their "failure of consideration" defense; (2) the defendants committed a breach of the brokerage agreement where the agreement was a bilateral contract and the plaintiff provided valid consideration; and (3) if the contract was unilateral, the plaintiff performed the required act, introducing a "lessee or prospective lessee or any other entity" to the defendants, prior to any revocation.[3]

---

[2] The judge treated the plaintiff's cross motion as an opposition to the defendants' motion for summary judgment on the breach of contract claim and decided it on the merits; the judge ordered summary judgment on the plaintiff's remaining claims based on the plaintiff's failure to oppose the defendants' motion as to those claims.

[3] The plaintiff's contention that the defendants failed to raise a lack of consideration as an affirmative defense to his complaint, see Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974), and as a result, were not entitled to summary judgment on his claims of fraud and violation of G. L. c. 93A, was not raised in the Superior Court and therefore waived. See Palmer v. Murphy, 42 Mass. App. Ct. 334, 338 (1997) ("Objections, issues, or claims -- however meritorious -- that have not been raised at the trial level are deemed generally to have been waived on appeal").

2

As to the denial of the plaintiff's motion for summary judgment, "We review the denial of a summary judgment motion de novo, to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Anderson v. Gloucester, 75 Mass. App. Ct. 429, 432 (2009), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Because no material facts are disputed, and the brokerage agreement was a bilateral contract for which the plaintiff provided valid consideration and performed sufficiently, we reverse so much of the judgment as relates to the breach of contract claim and remand that claim for entry of a new judgment in favor of the plaintiff and for an assessment of damages consistent with this decision. We otherwise affirm the judgment.

Background. The undisputed facts are as follows. In August 2017, the plaintiff entered into a brokerage agreement with the defendants entitled "Exclusive Right to Lease/Rent," (agreement) for a commercial property in Malden (property).[4] The

---

Because this claim "fits none of the usual exceptions to the general rule that claims not raised below are waived on appeal," we do not address it. Id. at 338-339.

[4] In the provisions of the agreement set forth below, the terms "realtor" and "broker" refer to the plaintiff and the term "lessor" refers to the defendants.

3

agreement required the defendants to pay the plaintiff a commission of four percent of the sale price if a "lessee or a prospective lessee or any other entity should take title to the deed or should purchase the property during the term of [the] agreement or within any leasing situation; and all extensions thereof," and such purchase "involv[ed] parties that the realtor or his subagents or any other entity have introduced to the property" or occurred "within 180 days after final termination of [the] agreement or leasing situation end date derived from [the] agreement between lessor and tenant or any other entity" (emphasis added).

The agreement further required the defendants to refer "all inquiries of brokers or others interested in" the property to the plaintiff, and stated that "a commission is due and payable in cash or certificate upon the lease signing or transfer of title and/or interest in the property, by any means during the term of this agreement or within 180 days (protective period) after termination of agreement and all extensions thereof" (emphasis added).

With respect to how the property would be marketed, the agreement provided that

> "As further consideration for the Lessor's or Seller's listing said property with the Broker; the Broker agrees to provide one or more of the following marketing methods at Broker's sole discretion and expense, to be done as indicated at no expense to the Lessor or Seller.

4

"(a) Have a description of the exterior and interior of the property taken, processed and forwarded to each member of the MLS Property Information Network Inc.

"(b) Have a sign displayed on said property advertising it <u>for sale and or lease/Rent</u>.

"(c) have the property advertised in a newspaper or newspapers chosen by the Broker."  (Emphasis added.).

The plaintiff at his own expense placed a sign on the property advertising its availability, and listed the property for sale in the Multiple Listing Service (MLS) and LoopNet real estate databases for a price of $6 million.  Dan Martignetti (buyer) saw the plaintiff's LoopNet posting and went to see the property.  Upon arriving, the buyer called the telephone number on a sign posted on the property, spoke to the plaintiff, and the plaintiff came over to let him in and walk around the property.  The buyer proceeded to contact the plaintiff on two other occasions to access the property.  The buyer concluded that he was interested in purchasing the property, researched the property's owner, who was listed as defendant Richard Di Girolamo, and without involving the plaintiff, purchased the property in December 2017, during the term of the agreement, for $5.9 million.  This figure was $100,000 below the asking price set by the plaintiff.  After the sale was completed, the plaintiff demanded payment of a four percent sales commission

5

and the defendants refused, instead offering a check, labeled "Settlement," in the amount of $2,000.[5]

Discussion.  "We review a decision to grant summary judgment de novo . . . ."  Shea v. Cameron, 92 Mass. App. Ct. 731, 734 (2018).  "The moving party is entitled to summary judgment if . . . 'there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law.'"  Huang v. Ma, 491 Mass. 235, 239 (2023), quoting HSBC Bank U.S.A., N.A. v. Morris, 490 Mass. 322, 326 (2022).  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "On appellate review of a judge's decision on cross motions for summary judgment, we view the record in the light most favorable to the party against whom the judge allowed summary judgment . . . ."  Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 516 (2011).

This is a straightforward case.  The agreement, among other things, provided that the plaintiff was entitled to a commission on any sale of the property during the agreement's term to an entity the plaintiff had introduced to the property.  The plaintiff clearly introduced the buyer to the property.  An affidavit by the buyer introduced by the defendants in support of their case, states that he became aware of the property

---

[5] A four percent commission on the purchase price would have been $236,000.

6

through his wife seeing the LoopNet listing. He went to the property, called the number on the sign, and the plaintiff came and let him into the property to see it. The plaintiff also met the buyer at the property on two other occasions to provide him access to the building.

The defendants argue that there was no consideration for their promise to pay a commission if an entity the plaintiff introduced to the property purchased it during the term of the agreement. But they focus only on the single paragraph in which they promised to pay a commission, which does not state any obligation of the plaintiff. But outside of that paragraph, the agreement included many promises by the plaintiff, including a promise to advertise the property, which -- even leaving aside the LoopNet listing discussed below -- the plaintiff did, at his own expense, by posting the sign at the property through which the buyer initially contacted him.

The defendants argue that the plaintiff was not authorized to post a listing for the sale, rather than the lease, of the property. To begin with, such authorization is irrelevant. The plaintiff is entitled to a commission on the sale of the property to anyone to whom he introduced the property during the term of the agreement. The buyer is within that category. The agreement contains no restriction based on the method by which the plaintiff finds the ultimate purchaser. Nor, if the

7

defendants objected to the listing by which the plaintiff introduced the buyer to the property, were they required to sell it to him; if they had not, it would have been just as though the listing by which the buyer heard of the property had never been posted, and no commission could be due.

In any event, we think the agreement did authorize placement of the LoopNet listing. The agreement specifically required the plaintiff "to advertise the property and submit it to the members of the MLS Property Information Network Inc." Given the express authorization of signage advertising the property "for sale and/or lease," we think the LoopNet listing amounts to an advertisement of the property within the meaning of the agreement.[6]

Although this suffices to resolve the case, the plaintiff also contends that the agreement to sell the property was exclusive. He argues that by entering into an exclusive agreement to market the defendants' property in exchange for a commission upon the property's sale, he provided valid consideration to form a bilateral contract, and that his introduction of the property to the buyer constituted sufficient

---

[6] The defendants also argue that no one at the plaintiff's brokerage company had a broker's license at the time of the property's sale. The operative time, however, is the time that the introduction was made, at which point it is undisputed that the plaintiff had a broker's license.

performance to entitle him to the promised commission.  In contrast, the defendants maintain that the agreement was merely a unilateral contract, revocable at their discretion as property owners, and therefore did not obligate them to pay a commission. We agree with the plaintiff's position.

A real estate broker is entitled to a commission if he is the "efficient or predominating cause of a sale of the property," Bump v. Robbins, 24 Mass. App. Ct. 296, 303 (1987), unless the brokerage contract contains other terms.  If there is no consideration, a brokerage agreement constitutes a unilateral promise to pay a commission if the property is sold during the stated term; such a promise may be revoked prior to a sale by the broker through a sale by the owner.  See id. at 304.  An agreement for an exclusive brokerage, however, "if supported by consideration, . . . is bilateral and irrevocable during its stated term."  Id. at 303-304.

Here, it was undisputed that the plaintiff agreed to undertake affirmative efforts, including advertising the property and submitting it to an online real estate database, to secure a tenant for the property.  In doing so, the plaintiff provided adequate consideration to support the conclusion that he had an exclusive brokerage agreement with the defendants to market the property.  See Samuel Nichols, Inc. v. Molway, 25 Mass. App. Ct. 913, 913 (1987) (finding a valid exclusive

9

brokerage agreement where broker made "enforceable promise which bound it to expend efforts on the property owner's behalf"). The plaintiff's affirmative promise to market the property distinguishes this case from others where no consideration was found when a party was merely a "passive recipient" of the grant of an exclusive agency. See, e.g., Boston Capital Funding, LLC v. BEK Winchester Winning Farm LLC, 103 Mass. App. 573, 578-579 (2023) (no consideration, and thus unilateral contract, where party "did not make any promises regarding what it would do to procure the equity, and it could have entirely forgone the opportunity to procure the equity and secure the commission"). Further, the defendants do not cite any authority to support their contention that separate consideration is required to make the exclusive brokerage clause irrevocable.

Because the parties' agreement was supported by consideration, it was a bilateral contract and the defendants could not revoke the agreement by selling the property to a third party within the exclusive brokerage time period.[7] See Bump, 24 Mass. App. Ct. at 303-304 ("if supported by

---

[7] Assuming arguendo that the plaintiff did not provide adequate consideration for the right to an exclusive brokerage, and the brokerage agreement here was a unilateral contract, the plaintiff still performed prior to the defendants' sale of the property by introducing the buyer to the property. Thus, the agreement was not revoked by the defendants' direct sale of the property to the buyer. See Bump, 24 Mass. App. Ct. at 304.

consideration, an agreement for an exclusive brokerage is bilateral and irrevocable during its stated term"). The plaintiff undertook significant efforts to market the property as required by the agreement within the exclusive brokerage time period. The plaintiff advertised the property online with an asking price that was within two percent of the eventual purchase price. The plaintiff posted a sign on the property indicating its availability, which the buyer relied on in contacting the plaintiff to view the property. The plaintiff also met the buyer at the property multiple times to allow the buyer to access and evaluate his eventual purchase. When viewed in the light most favorable to the plaintiff, the plaintiff's efforts "introduced" the buyer to the property as required by the agreement and thus constituted sufficient performance. Compare Upper Cape Realty Corp. v. Morris, 53 Mass. App. 53, 59 (2001) (plaintiff "introduced" buyer to property, and thus entitled to commission under exclusive brokerage agreement, where plaintiff's "for sale" sign alerted buyer to property and buyer contacted seller directly). Therefore, by failing to pay the plaintiff a commission of four percent of the sale price, as the agreement required, the defendants committed a breach of the brokerage agreement.

Conclusion. We affirm the entry of summary judgment for the defendants on the plaintiff's claims for fraud, unjust

11

enrichment, and violation of G. L. c. 93A.  We reverse the summary judgment for the defendants on the breach of contract claim and remand the case to the Superior Court for further proceedings consistent with this decision.

So ordered.

By the Court (Rubin, Hand & Smyth, JJ.[8]),

Clerk

Entered:  November 17, 2025.

---

[8] The panelists are listed in order of seniority.